### Jennie McDougal et al. v. Robert H. Bradford et al.

#### No. 6817.

1. **Community Property—Payment of Purchase Money.**—Land was bought and deed delivered reciting payment of consideration. The wife died and the husband married again. There was testimony to payment on the land after this marriage. He died leaving a widow and children. In controversy between widow and the children of the former marriage touching the land, *held*, the law requires some degree of certainty in the proof that the payment was made out of the community of the last marriage; it will not be presumed when the payment was made soon after the marriage.

2. **Homestead.**—Husband and wife owned a tract of land. The wife died leaving children of the marriage. The land was not their homestead. The husband married again, and died in 1867 insolvent, leaving children of both marriages. The County Court set apart the land to the widow and the minor children of both marriages as homestead, *Held:*

   1. Upon the first wife's death her interest in the land descended to her children.
   2. Upon the husband's death that part which had descended could not be appropriated as homestead to the widow and her children.
   3. At the time of the husband's death the statute in an insolvent estate cast title in the homestead upon the widow and children occupying it as such.

3. **Limitation—Tenants in Common.**—The children of a marriage dissolved by their mother's death and inheriting from her were tenants in common with the widow and children of a second marriage with their father. The possession of the land by the widow would not be adverse until the right of the children was repudiated and adverse possession continued.

4. **Order of Probate Court, Without Jurisdiction.**—The order of the Probate Court setting apart as homestead to the widow and minor children can not affect the rights of parties owning it, and to which the deceased had no title. This applied to an order setting apart as homestead community property of a former marriage, part of which was inherited by the children of that marriage upon the death of the mother.

5. **Fundamental Error.**—A decree based upon erroneous construction of the laws of descent is fundamental and ground for reversal.

Appeal from Denton. Tried below before Hon. D. E. Barrett.

This suit was brought in the District Court of Denton County on the 4th of November, 1885, by Jesse Hyatt, Robert H. Bradford, and Jesse Bradford, a minor, who sues by his next friend Robert H Bradford, plaintiffs, against Jennie McDougal, A. C. McDougal, her husband, and John Hyatt (Mrs. McDougal's son by a former marriage with Stephen Hyatt, deceased), Loretta Daugherty and Boone Daugherty her husband, S. C. Thornton, the Texas & Pacific Railway, the Missouri Pacific Railway and the city of Denton, to recover $\frac{62}{183}$ of two tracts of land, situated at the town of Denton, out of the H. Cisco pre-emption survey, and containing about forty-five acres, for partition, and for rents and profits; and set out in their amended petition, filed January 16, 1889, that Jane and Stephen Hyatt were married in 1856; that Jane Hyatt died in June, 1862, leaving surviving her her children Jesse Hyatt, Clarissa Hyatt, and Julia Hyatt, the issue of said marriage; that afterward, in 1862, Julia Hyatt died without being married, and without issue, and left surviving her her father Stephen Hyatt, and her sister Clarissa Hyatt, and her brother Jesse Hyatt; that in 1863 Stephen Hyatt intermarried with Jennie Walden, and two children, John W. Hyatt and George Hyatt, were the fruits of said marriage; that Stephen Hyatt died in 1867, leaving as his heirs at law Jesse Hyatt and Clarissa Hyatt, the issue of his marriage with Jane Hyatt, John W. Hyatt and George Hyatt, issue of his marriage with Jennie Hyatt, and Jennie Hyatt his wife, and that in 1871 George Hyatt died without issue; that in 1873 Clarissa Hyatt intermarried with plaintiff Robert H. Bradford; that there were born to them Jesse Bradford and Willie Bradford; that on the 28th day of June, 1876, said Clarissa Bradford died intestate, leaving surviving her her two children and her husband; that in 1878 Willie Bradford died, leaving his father Robert H. Bradford and his brother Jesse Bradford his heirs at law; that in 1882 Jennie Hyatt intermarried with A. C. McDougal; that at the time of the death of Jane Hyatt she and Stephen Hyatt owned the land in controversy as community property; that plaintiffs are entitled to $\frac{62}{183}$ of the land as their share of the estate of Jane and Julia Hyatt, deceased, and that defendants among them are entitled to $\frac{121}{183}$ of the land; that defendants Jennie McDougal and John Hyatt have conveyed portions of said land to the Texas & Pacific and Missouri Pacific Railway Companies, to S. C. Thornton, and to the city of Denton, and that said sales were wrongful and without the consent of plaintiffs; that they received the consideration for which such conveyances were made, and refused to pay to plaintiffs any portion thereof; that said Jennie and A. C. McDougal ever since their marriage in 1882 have been in the actual exclusive possession of said land for more than two years preceding the institution of this suit, and have appropriated rents and profits to their own use, which rents, etc., are worth $160 per year, and

pray that they have judgment for said interest and that commissioners be appointed to partition same, and if it should appear that defendants Jennie McDougal and John Hyatt have made the sales heretofore stated, or any of them, and that the court should be of the opinion that the purchasers ought to be protected, that all such sales be charged to the account of Jennie and A. C. McDougal and John W. Hyatt, and the portion due the plaintiffs be set over to them out of the remainder. That the court estimate the value of the rents and set over to plaintiffs a sufficient amount of said land to compensate them for the value of the rent, or that they have judgment in money for the value of said rent.

All the defendants answered. Loretta Daugherty and Boone Daugherty, in their answer filed January 19, 1889, pleaded not guilty, traverse the pleas of five and ten years limitations pleaded by defendants Jennie and A. C. McDougal and John Hyatt, and by special answer allege that they are the owners in fee simple of a one-fourth interest of the two tracts of land in controversy, ask judgment for their interest, and for partition, and if a fair partition can not be made that the same be sold for partition and one-fourth of the proceeds be paid them, and that Jennie McDougal and John Hyatt account to them for one-fourth of the proceeds of the portions of land sold by them.

The Texas & Pacific and Missouri Pacific Railway Companies answer, filed January 4, 1886, general demurrer, general denial, not guilty, and special answer. S. C. Thornton answered not guilty and general denial. The city of Denton answered by plea of not guilty, general denial, the five and ten years statutes of limitation, and special answer. Jennie and A. C. McDougal and John Hyatt, by their third amended answer filed the 16th day of January, 1889, pleaded general demurrer, not guilty, general denial, the five and ten years statutes of limitation, and suggestion of valuable improvements in good faith.

On the 13th of February, 1889, the cause was tried before the court without a jury; and it appearing that Jennie McDougal had acquired all the interest of Jesse Hyatt, the court rendered judgment that the Missouri Pacific and Dallas & Wichita Railways go hence without day; that the Texas & Pacific Railway Company, S. C. Thornton, and the city of Denton have the land claimed and held by them under their deeds; that Robert H. Bradford and Jesse Bradford have one-fifth of the land, to be equal in value to one-fifth of the whole tract, excluding the value of the improvements made by defendants; that Jennie McDougal have one-fifth of the land, deducting out of her one-fifth the amount of land sold by her to the railroad and S. C. Thornton; that Loretta Daugherty have one-sixtieth of the land, to be equal in value to one-sixtieth of the whole, and that Jennie McDougal have the remaining seven-twelfths to be used by her as a homestead during her life; provided, if she should abandon or cease to occupy the same the interests of plaintiffs Bradfords, Loretta Daugherty, and Jennie McDougal may be partitioned among

them according to their respective interests therein, and appointed commissioners to partition; and that Jennie and A. C. McDougal pay all costs of suits.

From this judgment the defendants Jennie McDougal, A. C. McDougal, and John W. Hyatt appealed. The relations, heirship, and successive deaths of the parties were proved as alleged. It was proved that Stephen Hyatt was a widower when he married Jane McCusley, that he had been previously married, and that Loretta Daugherty was the only issue of the first marriage.

The conclusions of fact and law as filed by the court are as follows:

1. I find that the land in controversy was the community property of Stephen Hyatt and his second wife Jane Hyatt.

2. That Stephen Hyatt and his second wife Jane Hyatt were married in 1856, and that they had three children the fruits of their marriage, viz., Jesse, Julia, and Clarissa.

3. That at the time of his marriage with Jane Hyatt, Stephen Hyatt was a widower with one child, Loretta Hyatt, now the wife of Boone Daugherty.

4. That in June, 1862, Jane Hyatt died, leaving surviving her her husband Stephen Hyatt and their three children, Jesse, Julia, and Clarissa.

5. That in August, 1862, Julia Hyatt died, leaving as her heirs her father Stephen Hyatt, her sister Clarissa, her brother Jesse, and her half-sister Loretta, now the wife of Boone Daugherty.

6. That in December, 1862, Stephen Hyatt and defendant Jennie McDougal were married, by which marriage they had two children, John W. Hyatt and George Hyatt; that George Hyatt died in 1872.

7. That Stephen Hyatt died in 1867, leaving as his heirs his daughter Loretta by his first wife, his daughter Clarissa and his son Jesse by his second wife, and his two sons, John W. and George, by his third wife, and his third wife Jennie Hyatt, now McDougal.

8. That on the 23d of October, 1873, plaintiff R. H. Bradford and Clarissa Hyatt were married, and had two children born of the marriage, Jesse and Willie. That Clarissa, wife of plaintiff R. H. Bradford, died June 26, 1876; their son Willie died July 23, 1878.

9. That defendant Jennie McDougal sold a part of the land in controversy to the Texas & Pacific Railway Company and to S. C. Thornton, as set forth in statement of facts in this case.

10. That about the year 1868 the Probate Court of Denton County set apart the land in controversy as the homestead of Jennie Hyatt (now Mrs. McDougal) and the minor heirs of Stephen Hyatt, deceased, who were Jesse Hyatt, Clarissa Hyatt, John W. Hyatt, and George Hyatt; that said order was made in course of administration upon the estate of Stephen Hyatt, and not upon administration of the com-

munity estate of Stephen and his second wife Jane; that the estate of Stephen Hyatt was insolvent.

11.   That the defendant Jennie McDougal has occupied said premises as her homestead ever since the death of Stephen Hyatt, and has never abandoned the same as her homestead.

12.   That since the death of Stephen Hyatt defendant Jennie McDougal has purchased from Jesse Hyatt all his interest in the land in controversy.

13.   Upon the foregoing state of facts my opinion is that upon the death of Stephen Hyatt he owned seven-twelfths of the land in controversy, which the defendant Jennie McDougal is entitled to hold as a homestead as long as she lives or sees proper to use it as a homestead, and that by reason of her purchase of Jesse Hyatt's interest in his mother's estate to one-fifth of the land in fee simple, and that the plaintiff R. H. Bradford and Jesse Bradford are together entitled to one-fifth of said land, and that defendant Loretta Daugherty is entitled to one-sixtieth of said land, and render judgment accordingly, directing that the defendant the Texas & Pacific Railway Company, S. C. Thornton, and the city of Denton be quieted in their title, and that the commissioners in partitioning the premises subtract the amount sold to the Texas & Pacific Railway Company and S. C. Thornton from the one-fifth to which Jennie McDougal is entitled in fee simple and set apart to her in fee simple what remains after deducting from the one-fifth acquired from Jesse Hyatt the portion sold to the railway company and to Thornton.

[Other necessary facts will be found in the opinion. This statement accompanied the opinion.]

A. W. Robertson and Owsley & Walker, for appellants.—1.  Land purchased during the lifetime of the second wife Jane Hyatt, and a balance of the purchase money paid during the marriage with the third wife, was community property of the third marriage to the amount of the balance of the purchase money so paid.

2.   If the land in controversy is subject to partition among the heirs of Jane Hyatt, deceased, the right of Clarissa Hyatt to have partition of same accrued at the date of her marriage in 1873, and she and her heirs at law are barred by the statute of limitations.  Rev. Stats., art. 3265; Scoby v. Sweatt, 28 Texas, 713; Ellett v. Moore, 6 Texas, 243; Thompson v. Cragg, 24 Texas, 582.

3.   The judgment of a court of competent jurisdiction is conclusive of the matters adjudicated by it, and can not be attacked collaterally except for fraud.  Horton v. Hamilton, 20 Texas, 606; Withers v. Patterson, 27 Texas, 499; Brockenborough v. Melton, 55 Texas, 493; Nichols v. Dibrell, 61 Texas, 542; Freem. on Judg., sec. 135; Skinner v. Moore, 30 Am. Dec., 158.

4. The County Court had jurisdiction, and was the only court that had jurisdiction, to determine what was the homestead and to set it apart to the surviving widow and the minor children of the decedent's estate, and its judgment in so doing can not be attacked collaterally. Martin v. Robinson, 67 Texas, 368; Cannon v. Bonner, 38 Texas, 487.

5. After finding said land was set apart as a homestead as above, and after further finding that the estate of said Stephen Hyatt was insolvent at the time said homestead was so set apart, the court erred in not finding that the title to said homestead vested absolutely in fee simple in the widow and the minor children of said Stephen Hyatt, deceased. Pasch. Dig., art. 1305; Rev. Stats., arts. 2002–2004; James v. Thompson, 14 Texas, 463; Green v. Crow, 17 Texas, 189; Sossaman v. Powell, 21 Texas, 665; Watson v. Rainey and Wife, 69 Texas, 319; Horn v. Arnold, 52 Texas, 165; Mabry v. Ward, 50 Texas, 404.

*Ferguson & Davidson* and *Matt Daugerty*, for appellees.—1. Property acquired by purchase during marriage is presumed to be community property, and the burden of proving it to be otherwise is on the party asserting it, and it must be clearly proved. Cooke v. Bremond, 27 Texas, 459.

2. The plaintiffs and defendants being tenants in common, limitation would not begin to run in favor of the tenant in possession until he gives notice to his tenants in common that he sets up exclusive rights to the property or does some act indicating unequivocally such intrusion. Gilkey v. Peeler, 22 Texas, 663; 27 Texas, 358; Baily v. Trammell, 27 Texas, 328; Reed v. West, 47 Texas, 247.

3. The Probate Court had no jurisdiction or authority to set aside the property of appellees as the homestead of the widow of Stephen Hyatt, and the judgment, in so far as it affects the right or title of any property except that of the deceased, Stephen Hyatt, is void and of no effect and can be attacked collaterally. Withers v. Patterson, 27 Texas, 499; Bradley v. Love, 60 Texas, 475.

COLLARD, JUDGE.—The first assignment of error is, "The court erred in finding the land in controversy to be the community property of Stephen and Jane Hyatt."

It was in proof that during the life of Stephen Hyatt's first wife he owned a place in Louisville. His first wife died in 1853, and he was married again in 1854 or 1856 to Jane Cusley, while yet living on the place in Louisville, Denton County, Texas. His second wife Jane died in 1862, and he was married again to Jennie Walden (now Jennie McDougal, one of the defendants) in December, 1862. He sold the Louisville place, at what time does not appear, and in the fall of 1860, during the life of Jane, purchased the six acres and the thirty-nine and three-fourths acres of land in controversy. It is not shown what he did with

the proceeds of the Louisville place, nor is it shown that any of it went into the purchase of the land in controversy. We see then that on this evidence the finding of the court was correct, that the property in suit was community of the second marriage with Jane Hyatt. He had not, however, fully paid for the six acres of land at the time of his marriage with his third wife Jennie; he owed some $350 on it. The deed to it, dated the 27th day of November, 1860, was an absolute deed to him, reciting the consideration $475 as paid in cash. Mrs. McDougal, the third wife of Stephen Hyatt, testified that she had some personal separate estate when she was married to Stephen in December, 1862, and that she "let him have money with which to pay for a portion of the land in controversy;" and again she says, "after we were married the balance of $350 was paid in a pair of mules and a yoke of oxen. When I married Stephen Hyatt I had eleven head of cattle, five head of horses, and $165 in gold, all of which was taken charge of by Stephen Hyatt and disposed of by him." This evidence is too indefinite to show what amount, if any, of her separate property was used to pay the balance due on the six acres of land. She had no mules and she does not show that the oxen were a part of her eleven head of cattle. On this subject J. A. Carroll testified that "Stephen Hyatt paid Potter (the vendor of Hyatt) a yoke of steers and a horse before the war for a part of the consideration of the six acres of land," and he understood a pair of mules were paid too, but the witness said his mind was not clear about the mules, "but," he says, "I know that the horse and oxen were paid prior to May 3, 1861, for I started to the Confederate army on that date, and Potter went with me and rode the horse."

C. C. Daugherty testified: "I think Stephen Hyatt paid Potter a horse and a yoke of oxen and some mules for the six acres" and a small note on witness. "I saw Potter with the horse the last of the year 1860 or first of 1861. I was intimate with Potter and never heard of Hyatt's owing him anything for the lot." This evidence is not satisfactory, but it tends to show that Mrs. McDougal's memory of the transaction may have been at fault. Her evidence does not, however, trace any of her property into a payment or part payment of the six acres.

It is insisted by appellants that inasmuch as Mrs. McDougal's evidence shows that $350 of the purchase money of the six acres were paid after she and Hyatt were married, to that extent the land would be community of their marriage. Her evidence does not inform us when the payment of the balance due was made or how long it was after the marriage. The law requires some degree of certainty in the proof in such a case—proof that the payment was made out of the community of such marriage; it will not be presumed from the fact that the payment was made soon after the marriage. In this respect the facts are much the same as in the case of Medlenka v. Downing, 59 Texas, 37,

where it was held that such a payment of a portion of the purchase money would not be sufficient to show that the payment was made out of the community of the last marriage, even when paid with rents not shown to have accrued during the marriage.

We do not find that the court erred in holding that the land in controversy was the community property of Stephen Hyatt and Jane Hyatt.

Appellants assign the following error: "After finding that the land in controversy was community property of Stephen Hyatt and his second wife Jane Hyatt, and that that portion of the same which belonged to the estate of Jane Hyatt was subject to partition among the heirs, then the court erred in holding that the claim of Robert Bradford and Jesse Bradford as pleaded was not barred by the statute of limitations, Clarissa Hyatt, the wife of Robert Bradford and mother of Jesse Bradford, having been married in the year 1873, twelve years before the institution of this suit."

Clarissa Bradford was one of the children of Stephen and Jane Hyatt, and at the death of her mother inherited one-sixth of her estate in the land, Jesse Hyatt, another child, one-sixth, and Julia, another child, one-sixth, their father taking one-half of the same as his community; when Julia died unmarried and without issue, Stephen took by descent from her one-twelfth of the whole and Jesse and Clarissa two-sixtieths each, and Loretta, a sister of the half-blood by Stephen's first marriage, took one-sixtieth of the whole, thus leaving in Stephen upon the death of Jane and Julia seven-twelfths of the whole, and in Jesse, Clarissa, and Loretta (Daugherty) the remaining five-twelfths of the land. The land was never the homestead of Jane and Stephen Hyatt. After the death of Stephen Hyatt, he having previously married Jennie Waldon (now Jennie McDougal), by whom he had two children, John and George, in the administration of his estate by one Venters, in 1868, the Probate Court of Denton County set apart the land in controversy to his surviving wife Jennie Hyatt (now McDougal) and his minor children, Clarissa Hyatt, Jesse Hyatt, John Hyatt, and George Hyatt, "the family then residing on the land." The estate of Stephen Hyatt was insolvent. The record does not show for what purpose the land was so set apart, but inasmuch as the family were living on the land at the time of the order it might be presumed that it was done to secure a homestead for them. The evidence of this order was by parol, the records of the court having been destroyed by fire. At this time Clarissa owned by inheritance from her mother Jane Hyatt, deceased, and from her deceased sister Julia one-fifth undivided interest in the whole of the land, independently of the interest of her father. The seven-twelfths of the land owned by Stephen Hyatt at his death could be protected as a homestead for the surviving wife and his minor children by the second and the third marriage, but we do not think the Probate Court had the power to set aside for such homestead purposes the one-

fifth of Clarissa derived from her mother's portion of the community. If he had ever acquired any homestead interest in Jane's portion of the community after her death it was extinguished by his death, and it could not by descent or order of the court in his administration be applied to homestead purposes for the benefit of the third wife and family. To the extent of her title by virtue of succeeding to the homestead right in the seven-twelfths belonging to Stephen at his death she (Mrs. McDougal) was a tenant in common with Clarissa and Jesse Hyatt as to their portion derived from their mother, and she could not avail herself of the statute of limitations against them nor against Loretta, had they all been *sui juris*, until she had repudiated their rights. The assignment of error only claims limitation against the heirs of Clarissa, and we need not proceed further than the discussion of her rights. Neither she nor her heirs were barred. Gilkey v. Peeler, 22 Texas, 664.

Appellants contend that by another assignment of error that "after the court had found that the land was set apart by the County Court of Denton County to Jennie Hyatt and the minor heirs of Stephen Hyatt, the court erred in allowing the judgment attacked collaterally." The court's action in declaring that the five-twelfths of the land descending to the heirs of Jane Hyatt at her death was subject to partition was correct. Mrs. McDougal and her children could not acquire a homestead in such interest, and the Probate Court in the administration of Stephen Hyatt's estate had no power to so decree. The decree to that extent was void. Bradley v. Love, 60 Texas, 473; Shepperd v. White, 16 Texas, 163. The interest of the heirs inherited from Jane Hyatt as well as the interest of Loretta Daugherty derived from the same source by inheritance from her half-sister was subject to partition upon the death of their father; and so far the judgment of the lower court was correct in disregarding the order of the Probate Court setting all the land aside as a homestead.

It is claimed by appellants that the order of the Probate Court vested the absolute title to the homestead in the widow of Stephen Hyatt and his minor children named in the order, and the court erred in not so finding. We think this assignment should be sustained as to the seven-twelfths of the land owned by Stephen Hyatt at his death. Stephen Hyatt died in 1867, at which time he with his wife and minor children were occupying the land as a homestead; the order mentioned was made in 1868, and it was shown in terms that his estate was insolvent; the court so found, and neither the appellants nor the appellees question the finding by any assignment of error, though there was evidence tending to show that his heirs received property and money from his estate. The finding not being questioned, we will assume it to be correct. Under the law as it existed at the time of his death and at the time of the order setting aside the homestead to his widow and minor children, the estate being insolvent, the beneficiaries of the

homestead took the absolute title to the same, free from distribution among others interested in the estate.    Green v. Crow, 17 Texas, 189; Sossaman v. Powell, 21 Texas, 665; Scott v. Cunningham, 60 Texas, 566; Childers v. Henderson, 76 Texas, 664.

According to these authorities, Hyatt's estate being insolvent, the title to the seven-twelfths of the land belonging to him at his death vested absolutely in Jennie Hyatt, his surviving wife, and his minor children, Jesse, Clarissa, John, and George Hyatt.    No more than such seven-twelfths could so vest, as we have before seen.    This homestead interest could not be partitioned among the joint owners so long as it continued to be the homestead of Mrs. McDougal.    The title so acquired to the homestead was and is a statutory title distinct from inheritance. Its origin is in the statute and passed to the beneficiaries in accordance therewith—that is, one undivided half to the surviving wife Jennie Hyatt (now Mrs. McDougal) and the other half to the minors named in the order of the Probate Court, share and share alike.    This is a result of the statute in force at the time and the construction placed upon it by the case of Green v. Crow and other cases cited above.    Pasch. Dig., art. 1305.    Loretta Daugherty was not a member of the family and was not named in the order, and hence under the rule she could not take any interest in the title to the homestead.

The present Constitution changes the rule so that the homestead vests in the heirs in like manner as other real property, and is governed by the same laws of descent and distribution, but can not be partitioned so long as the surviving husband or wife elects to use it as a homestead, or so long as the guardian of the minor children of the deceased may be permitted to so use it under order of the proper court.    Const., art. 16, sec. 52.

This being our view of the rights of the parties, other assignments of error become unimportant.    There is fundamental error in the judgment of the lower court which we must notice.

Jesse Hyatt and Clarissa Hyatt inherited from their mother and sister Julia one-fifth each of the whole of the land, which, as we have seen, may be partitioned, and by virtue of the homestead law they would be entitled to one-eighth of one-half of the seven-twelfths set aside out of Stephen Hyatt's estate as a homestead, and another small interest by inheritance from their half-brother George, deceased.    The interest in the homestead, however, is not subject to partition so long as Mrs. McDougal should choose to use same as a homestead.    The one-fifth belonging to each coming from their mother was subject to partition. Mrs. McDougal, pending the suit, bought the title of Jesse Hyatt, as was admitted on the trial, out of which the court below set aside a sufficiency to make good her deeds to parties to whom she had sold specific tracts.    The court adjudged to Robert H. Bradford and Jesse Bradford, surviving husband and son of Clarissa, one-fifth of the whole of the land

. inherited from Jane Hyatt and Julia, which was ordered to be partitioned, and also declared in them an inheritable interest from Stephen Hyatt in the seven-twelfths set aside as a homestead, the last not to be partitioned so long as it was used as a homestead. They really acquired no interest by their (or rather Clarissa's) inheriting from her deceased father, as we have before seen. Her interest in the homestead was not acquired in this way, and was not so much as the court's judgment made it.

The petition claimed title in plaintiff's to but $\frac{62}{183}$ in the land for the two shares of Jesse and Clarissa Hyatt, which would not amount to one-fifth for each; the title to the residue, or $\frac{121}{183}$ of the whole, was conceded to be in the defendants by the petition. No more of the land could be awarded by the judgment to plaintiffs than was claimed and prayed for in the petition. The judgment in favor of the plaintiffs Bradfords for even the one-fifth would not correspond with the petition; it was too much. There was fundamental error in the judgment.

Because of the errors pointed out, we conclude the judgment ought to be reversed and the cause remanded.

*Reversed and remanded.*

Adopted April 21, 1891.