RICHMOND et al. v. SIMS et al.

(Court of Civil Appeals of Texas. Texarkana. Feb. 15, 1912. Rehearing Denied Feb. 29, 1912.)

1. HUSBAND AND WIFE (§§ 254, 273*)—COMMUNITY PROPERTY — RIGHTS OF SURVIVING HUSBAND.

Unimproved land purchased by a husband during the life of his first wife, which was improved by buildings, and which the family was occupying as a homestead before her death, is community property, even though no part of the purchase price had been paid, and the wife's interest therein descended and vested in her children, subject to the homestead rights of her husband, and charged with the unpaid purchase price, which was a community debt.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 897–899, 1008–1024; Dec. Dig. §§ 254, 273.*]

2. HUSBAND AND WIFE (§§ 273, 274*)—COMMUNITY PROPERTY — RIGHTS OF SURVIVING HEIRS.

As a surviving husband is entitled to a life tenancy only in his deceased wife's portion of community property, the reversion in fee to a wife's share in community property occupied as a homestead passed at her death to their children, who thereupon became tenants in common with their father in the fee, and entitled to partition upon his death.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. §§ 273, 274.*]

3. HOMESTEAD (§ 134*)—COMMUNITY PROPERTY.

Where the facts as to use and occupancy justified the claim, the wife and children of a second marriage may have a homestead in the interest of the husband and father in property purchased by him and his first wife as community property, which passed to the husband and the children of the first marriage as tenants in common at the death of the wife.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 245; Dec. Dig. § 134.*]

4. HUSBAND AND WIFE (§ 262*)—COMMUNITY PROPERTY.

A payment by a husband on community property soon after the death of his wife does not raise the presumption that the money belonged to his separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 913, 914; Dec. Dig. § 262.*]

5. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY.

A community survivor, in order to pay a balance due on the property, may sell a sufficient portion of the estate, or appropriate a portion of the property, upon payment out of his separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

6. HUSBAND AND WIFE (§ 275*)—COMMUNITY PROPERTY.

The use by a surviving husband of community funds of a second marriage to pay part of the purchase price due on community property of himself and first wife created a charge on the estate in favor of the second community, which, though not by itself cognizable in partition, may properly be taken into account in adjusting the equities of the parties in a suit by the children of the first wife against the wife and children of the second marriage to recover their interest in the property and for partition.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

7. HUSBAND AND WIFE (§ 275*)—COMMUNITY PROPERTY—DESCENT AND DISTRIBUTION.

On the death of a husband who has taken community funds of himself and second wife to pay part of the purchase price due upon community property of a former marriage, which he has retained for a homestead, the claim created was community property of the second marriage and on his death his interest therein vested in his heirs, according to statutory rules governing the descent of personal property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

8. LIFE ESTATES (§ 17*)—CHARGES—IMPROVEMENTS.

A reversioner will not generally be charged with the value of improvements placed on the land by the life tenant, so that where, by the death of his wife, a husband became possessed of a life interest in her half of community property, with a reversion in their children, improvements made by him as life tenant, which consisted principally of clearing the land, must have been made with knowledge of his tenure, and, though they may have enhanced the value, were intended for the benefit of the life tenant, and so are not chargeable against the reversioners in a suit by them to determine their interest at his death.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 37, 38, 42; Dec. Dig. § 17.*]

9. HUSBAND AND WIFE (§ 275*)—COMMUNITY PROPERTY — ACTUAL DIVISION — IMPROVEMENTS.

In equitably dividing community property of a deceased husband and his first and second wives, in a suit by children of the first marriage, who were entitled as reversioners to a half interest in the fee, subject to his life tenancy, as heirs of their mother, the portion of the property containing the house, and also improvements added since the death of the first wife, should, so far as practicable, be set aside to the widow and children of the second marriage.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

10. HUSBAND AND WIFE (§ 275*)—COMMUNITY PROPERTY.

In an action by children of a former marriage to have their portion of community property of the husband and both wives set apart, the widow is chargeable with the proportion of the value of rents actually received by her after the death of her husband, which would, in the distribution of the property, go to the plaintiffs.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1025; Dec. Dig. § 275.*]

11. PARTITION (§ 114*)—COSTS.

The rule permitting the distribution of costs in partition suits equitably among the different part owners will not apply where, in an action by children of a husband by a former wife to have their portion of community property of the husband and both wives set apart, their title to any portion of the property was resisted by the widow and children of the second marriage; and upon the establishment of their title costs incurred therein should be charged against the defendants and only the actual cost of making the partition distributed among the different part owners.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 440–449; Dec. Dig. § 114.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by Rosa M. Richmond and others against Belle Sims and others. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Chas. G. Nunn and Richard B. Semple, for appellants. Geo. W. Wells and J. W. Gross, for appellees.

HODGES, J. This is a suit for the recovery of an undivided interest in 105 acres of land situated in Fannin county, and for partition. The land in controversy was purchased by Wash Sims in 1883 and during the lifetime of Charlotte, his first wife. The purchase was made entirely on credit, and the price was $420, payments to be made in three equal installments. The land was at the time unimproved. Wash and Charlotte Sims were married about the year 1877. Charlotte died shortly after the purchase of the land in 1883, and before any part of the purchase money was paid. At the time of her death, a cabin and crib had been built upon the land, and a few acres cleared, and Sims and his family were occupying the cabin as their homestead. No other improvements had been made upon the land prior to her death. Charlotte Sims left five children surviving her: Rosa Richmond, Lou Walker, who died about 1901, Letha Harvey, Ella Jones, and Clara Briggs. Letha Harvey is dead, and is survived by Lizzie Harvey, one of the appellants, her only child. Lou Walker left no children, but was survived by her husband, appellant Ed Walker, who with his wife's father, brothers, and sisters were her only heirs. Wash Sims was married to the appellee Belle Sims in 1885. Between the death of his first wife and his second marriage, he had paid $65 of the purchase money on the land, and had cleared about 10 acres. After his second marriage, he and his wife continued the use and occupancy of this land as their homestead till the date of his death, April 11, 1902. Sims was survived by his wife Belle and five children of the second marriage and the four children mentioned of the first marriage; one of the first set, a daughter, having died during his lifetime and leaving no heirs, except those mentioned. This suit is by Rosa Richmond, Lizzie Harvey, the only surviving child of Letha Harvey, and Ed Walker, the surviving husband of Lou Walker, a daughter of the first marriage. In their petition, the appellants allege that the property in controversy belonged to the community estate of Wash Sims and their deceased mother, and claim undivided interests therein. Defendants answered by general demurrer, general denial, and special answer, alleging that the land was the community property of Wash Sims and defendant Belle Sims; that it was their homestead until the death of Sims, and is still used and occupied by them as such at the present time; that, though the land was purchased during the marriage of Sims and his first wife, no part of the purchase money was paid during the lifetime of the first wife; that Wash Sims improved the land after the death of his first wife by erecting houses, fences, and making other additions, to the value of $1,500. The answer concluded by asking that they be awarded the land, but if this was not done to decree them the value of the improvements made on the land by Wash Sims and Belle Sims, and for general relief.

The case was submitted to the jury upon special issues. The jury found that Wash Sims, after the death of his wife Charlotte and before his marriage to the second wife, paid $65 of the purchase money; that after his second marriage he paid $400.50; that he built a cabin and crib on the land before Charlotte Sims died, worth about $40, and afterwards placed improvements upon the land, worth $1,625 when put there; that Wash Sims appropriated personal property belonging to himself and Charlotte Sims, worth $250. Other issues were submitted and passed upon by the jury; but they are not material in the discussion of the questions involved. In addition to these findings, the court made the following: "That the plaintiff Rosa Richmond owns an undivided 17/160, Lizzie Harvey, 17/160, and Ed Walker, 8/160, of the land in controversy; that the total interest of the plaintiffs equals 21/80 of the 105 acres, and that they are entitled to recover the same, charged with their pro rata of the purchase money paid by Wash Sims after the death of his first wife, $465.10, with legal interest thereon from the date of such payment to the date of trial, $711.84, plus their pro rata of the improvements placed on said land after the

death of Charlotte Sims, $1,625, less a credit for their pro rata of the improvements, $40, placed on said land prior to the death of said Charlotte Sims, and their pro rata of the personal property, $250, on hand at the date of death of said Charlotte Sims, together with legal interest on said $250 from the death of said Charlotte Sims, February 29, 1884, till the date of trial, $446.66, with interest on the $40 improvements from the death of Wash Sims April 11, 1902, to the date of trial, $20.93, and that plaintiffs' present interest equals 9⅓ acres of the whole average land in its present improved state, and that they are entitled to have same divided among them in proportion to their respective interests aforesaid; that defendants own and are entitled to jointly the remaining 59/80 of the land in controversy, to wit, 95⅓ acres." Judgment was entered up in accordance with those findings, and commissioners appointed, with directions to so divide the land. The plaintiffs below have appealed from that judgment.

[1-4] The land was properly treated as the community property of Wash Sims and his first wife, Charlotte. Upon the death of Charlotte, her interest descended and vested in her children, subject to the homestead rights of her husband, and charged with the unpaid purchase price, which was a community debt. While there is no specific finding as to whether or not the land was at the time the homestead of Wash Sims and Charlotte, the testimony shows such to be the case, and that it continued to be the family homestead up until the death of Sims in 1902. Wash Sims had the right, upon the death of his first wife, to continue the use and occupancy of the land as the family homestead. As such survivor, he became a life tenant as to the one-half interest vested by the death of Charlotte in her children, and a tenant in common with them in the fee to the entire tract. At his death, the children of the first marriage had the right to have that portion which they had inherited from their mother and their deceased sister segregated by partition from the half which belonged to their father. The wife and children of the second marriage had the right to claim a homestead interest in the latter portion, if the facts as to use and occupancy were such as to justify the existence of such a claim. The evidence shows that at the death of Charlotte Sims all of the purchase money of the land, $420, was unpaid, but that Sims thereafter appropriated to his own use personal property belonging to the community of himself and first wife, amounting to $250; that shortly after the death of Charlotte, and before his second marriage, he paid $65 of the purchase money. These sums added together make a total of $315. In adjusting the equities in the partition suit, the children of the first marriage had the right to

have the original community debt, in so far as it was chargeable against them, credited with that amount. If this were done, there would remain approximately $105 of the purchase-money notes which should be taken into account as a charge upon the land in the partition. The circumstances under which the evidence shows that the $65 payment was made by Sims soon after the death of his first wife does not raise a presumption that this money belonged to his separate property, or that it did not belong to the community of himself and former wife. McDougal v. Bradford, 80 Tex. 566, 16 S. W. 619.

[5-7] To pay this sum of $105 and accrued interest, Sims had the right to sell a sufficient quantity of the community estate remaining in his hands, or, if he had paid it out of his separate funds, he would have acquired the right to reimburse himself from that community property by an appropriation of a portion of it. Martin v. McAllister, 94 Tex. 567, 63 S. W. 624. The record conclusively shows that Sims did not sell any part of the land, and there is no evidence that he attempted to segregate any part of it from the other as an appropriation to his own use by way of reimbursing himself for the funds used in paying the purchase-money notes. The evidence shows that he used for that purpose funds belonging to the community of himself and second wife, and not his separate means. This had the legal effect of creating in favor of that community a charge upon the land to the extent of the funds used in excess of $315, and for which reimbursement could be demanded in this suit. That claim was a community asset of Sims and his second wife. Upon his death, his community interest therein vested in his heirs at law according to the statutory rules governing the descent and distribution of personal property. To illustrate, let us suppose that the amount paid by Sims from the community funds of himself and second wife which constituted a charge to be adjusted in the partition amounted to $210, or $2 per acre, on the land. In the final partition among the several distributees, each was entitled to take his or her share of the land charged with the debt of $2 per acre, less that portion of this debt which the distributee inherited from Sims, the deceased parent. What that portion is can be ascertained by an ordinary mathematical calculation. It is true, when considered as the subject-matter of partition, this community asset, or claim, would not be embraced in a suit for a division of the realty alone; but, inasmuch as it was a charge upon the realty involved, its distribution might well be taken into account in adjusting the equities between the parties.

[8-10] The appellants were not chargeable with the improvements placed upon the common property by Sims after his second mar-

riage. The ownership of the fee to one half of the land and his life interest in the other half made him a life tenant, in the event he elected to continue to use or occupy it as his homestead. While the improvements made by him may have enhanced the value of the land, they were nevertheless put there with the full knowledge of the character of his tenure, and presumably were intended largely for his own benefit. The testimony shows that the value of these consisted principally of clearing the land. In doing this, Sims was enabled to derive a revenue from the land by raising annual crops thereon, all of which were appropriated to his own use. This use continued approximately 17 years. Under those facts, it would be inequitable to allow Sims' surviving wife the value of that character of improvements. It is the general rule that the owner of the reversion will not be charged with the value of improvements placed upon the land by the life tenant. Elam v. Parkhill, 60 Tex. 581; Clift v. Clift, 72 Tex. 144, 10 S. W. 338; Calhoun v. Stark, 13 Tex. Civ. App. 60, 35 S. W. 410; Dunavent v. Fields, 68 Ark. 534, 60 S. W. 420; Tiedemann on Real Property, § 68. In so far as it was practicable in making an equitable division of the property, that portion upon which the houses and improvements of that character had been erected should be set aside to the widow and children of the second marriage as their portion of the estate. The widow was also chargeable with that proportion of the value of the rents actually received by her after the death of her husband which would, in the distribution of the property, go to the appellants. King v. Boch, 80 Tex. 157, 15 S. W. 804.

[11] Appellants also complain of the award of the costs made in the trial below. It seems that the court distributed all the costs among the parties according to the value of their respective interests, and also taxed a fee of $50 in favor of the guardian ad litem of the minor defendants as a part of the costs. The pleadings show that the title to any portion of the property asserted by the appellants was resisted by the widow and children of the second marriage. This imposed upon the appellants the necessity of adducing evidence establishing their title as a prerequisite to a participation in the partition. The statute authorizes the court in partition suits to distribute the costs equitably among the different part owners. That rule, however, has no reference to that portion of the costs incurred by any of the parties in establishing, over the objection of the other, his title or right to participate in the distribution. So much of the costs as were incurred by the appellants in establishing their title, made necessary by the objection of the appellees, should be adjudged against the appellees; but the actual cost of making the partition

should be distributed among the different part owners, according to the terms of the statute. Johns et al. v. Northcut et al., 49 Tex. 445.

We think the judgment rendered in the court below was erroneous in denying to the appellants all of the land to which they were entitled. We do not pass upon the sufficiency of the pleadings, but assume that they will be conformed to meet the views expressed with reference to the rights of the parties. What has been said is, we think, sufficient to dispose of the assignments of error without noticing them in detail.

The judgment of the district court is reversed, and the cause remanded.