## PHELPS et al. v. THURBER BRICK CO.
### No. 9832.

Court of Civil Appeals of Texas. Galveston.
June 7, 1933.

Dissenting Opinion June 21, 1933.

Rehearing Denied July 20, 1933.

Edgar H. Phelps, of Houston, for appellants Ed. S. Phelps and others.

Painter & Alpha, of Houston, for appellant Frank C. H. Keelan Estate.

John Hancock, Clarence Wightman, and Joe S. Davies, all of Fort Worth, and T. S. Taliaferro, of Houston, for appellee.

GRAVES, Justice.

Appellants, Ed. S. Phelps and Edgar H. Phelps, for themselves, and Mollie Sanders Woods and Connie L. Guess as joint administrators of the estate of Frank C. H. Keelan, deceased, challenge a judgment of the court below wherein the appellee, Thurber Brick Company, was allowed a personal judgment against Frank C. H. Keelan, deceased, and such administrators of his estate for $1,248.-38, with 7 per cent. interest thereon from February 19 of 1932, and a maximum of $500 for attorney's fees, together with the foreclosure of an alleged paving-assessment lien, effective not only against the Keelan estate as security for this money judgment, but also against the two Phelpses as well, no personal recovery having been entered against the latter.

The basis of the judgment was: (1). Assessment certificate No. 4, issued by the city of Houston on May 24 of 1928 against lot 1 in block 384 within its limits for paving done on the street it abutted, in which certificate Frank C. H. Keelan, Ed. S. Phelps, and Edgar H. Phelps were named as the owners of such property, although the enabling ordinance passed May 23 of 1928 directed its issuance against Mollie Sanders Woods, Ed. S., and Edgar H. Phelps, as owners; (2) two declared-upon amendments of such first enabling ordinance of May 23 of 1928 passed by the city council of Houston, the first one dated July 17 of 1928, wherein Ed. S. Phelps, Edgar H. Phelps, Mollie Sanders Woods, and Frank C. H. Keelan were named as such owners, the second one of date August 2 of 1929, wherein Frank C. H. Keelan, Ed. S. Phelps, and Edgar H. Phelps were named as the owners of the property.

The contract under which the paving had been done and the certificate issued was one between the city of Houston and the San Jacinto Construction Company, of date December 23, 1926, and by mesne assignments the rights and interests of that construction company had come down into the appellee, Thurber Brick Company, at the time of the

filing of this suit and of the judgment so rendered therein.

Under the facts conclusively developed upon the trial, no one of those named in this original enabling ordinance, nor in the certificate issued pursuant thereto the next day, other than Frank C. H. Keelan, as being the owners of the property had any title to it on those dates, May 23 and 24, 1928, the qualified fee therein being then owned and held by Frank C. H. Keelan, who continued to be such owner until his death on August 15 of 1929, when such fee terminated, and full title —through Mollie B. Sanders as a medium— became vested immediately as a result of his death in the appellants, Ed. S. Phelps and Edgar H. Phelps, in equal undivided portions; that is, as this court held on June 3 of 1931, in Guess et al. v. Phelps et al., 41 S.W.(2d) 75, Keelan's fee in the land had been a defeasible one and had been succeeded, upon the happening of the contingencies stipulated in Susan Mitchell's will, by a fee-simple title in Mollie B. Sanders; but long prior thereto, to wit, November 1 of 1926, Mollie B. Sanders (under her married name of Mollie Sanders Woods) had conveyed all the interest she then had or might thereafter acquire to the appellants, Ed. S. and Edgar H. Phelps, who therefore, as stated, acquired the full title at once upon the death of Keelan.

It thus likewise appears further that Frank C. H. Keelan was not only the sole owner of such limited estate in the property when the original assessing ordinance and its consequent certificate for the cost of the paving were issued on May 23 and 24, 1928, but that he was also such sole owner thereof at the times this first ordinance was undertaken to be amended by the city council on, respectively, July 17 of 1928, and August 2 of 1929, and that he so continued to be the exclusive owner thereof until his death on August 15 of 1929, when his defeasible fee immediately expired by its own limitation—nothing passing into his estate—and the appellants, Ed. S. and Edgar H. Phelps, came into final ownership as the grantees in the prior conveyance thereof from Mollie B. Sanders to them.

From this prior course and state at the time of the trial of the title to the property, it seems clear to this court that the judgment outlined supra is fundamentally erroneous, and cannot stand; further, that all facts materially relating to the controversy having been fully developed and being undisputed, a decree should enter here overturning that of the trial court, and rendering the cause herein declared upon in favor of the appellants. This decision is based in the main, in so far as it is deemed material to state them, upon these considerations:

■ 1. No lien for the paving done was valid against the property in the hands of the Phelps appellants, because they were neither owners thereof nor had any title thereto, either on the dates the initial assessment and the certificate were issued, or when the cited amendments thereof were acted upon, not having become invested with a title to it until the subsequent death of Frank C. H. Keelan. Nor had there ever been any privity of title, estate, contract, blood, or otherwise, between him and them in respect to it; his defeasible fee simply having ceased and been determined solely on the happening of the contingency specified in the will by which its duration had been limited—that is, his death prior to Susan A. and Mollie B. Sanders'— and their indefeasible one having independently at once come into being as grantees of Mollie Sanders Woods, the ultimate survivor of the devisees named by the testatrix. Guess v. Phelps (Tex. Civ. App.) 41 S.W.(2d) 75, writ of error refused.

2. Nor, further, had there been any contractual relation with reference to the paving enterprise, as affecting this property, between the city itself or the construction company on the one part, and any of the appellants on the other, since the proceedings were all of an involuntary character as concerned the latter, being taken under and as if authorized by the statutes, ordinances, and charter provisions in such cases made and provided.

3. It is true the appellee in its trial petition alleged for the first time on July 2 of 1931 "that the respective interests of the different parties to the suit were incapable of ascertainment, that the records did not clearly disclose the amount of interest of each defendant, that plaintiff was unable to determine the rights and interests of said defendants, and further pleading, as in its prior petitions, that the defendants be required to appear and disclose their pro rata interests in the property, and praying in the alternative that the court establish and fix the respective interests of the defendants in the property and the pro rata part which each would be required to pay on said special assessment, and further praying for the relief as in its prior petitions"; but neither the paving certificate nor any of the related ordinances contained any such recitals, and, as stated in considerations 1 and 2, supra, there had been nothing aliunde of those involuntary proceedings by privity or relationship of any sort that had at any time fastened liability for the paving cost upon appellants either in their persons or estates.

4. Moreover, a complete answer to this just-quoted position of the appellee is that, as this court, with the approval of the Supreme Court, held in Guess v. Phelps, supra, there never had in fact been any difficulty in determining the several interests of the various parties in the property involved under the terms of the will of Susan Mitchell; the mere fact that some of these, inclusive of the appellee, may have misconstrued it as late as

the filing of its third amended petition herein did not affect the rights of anybody.

■■ 5. Since the Phelpses thus had nothing more than the possibility of a contingent remainder by executory devise of the property over at the time both the certificate and its supporting ordinances were issued and the paving thereunder done, which whole period was coincident with Frank C. H. Keelan's defeasible tenure as exclusive owner thereof, no personal liability—nor, as before stated, any lien—by virtue of such proceedings arose against them or their subsequently acquired interests down from the will, under the long-established principle that the remainderman may not be mulcted for improvements put on the property by one holding only a life tenure (whatever called) or during the existence thereof. Ely v. Moore (Tex. Civ. App.) 297 S. W. 795, 799; Clift v. Clift, Supreme Court, 72 Tex. 144, 10 S. W. 338; Heidelberg v. Behrens (Tex. Civ. App.) 85 S. W. 1029; Dearing v. Jordan, 62 Tex. Civ. App. 107, 130 S. W. 876; Burns v. Parker (Tex. Civ. App.) 137 S. W. 705; Richmond v. Sims (Tex. Civ. App.) 144 S. W. 1142; 2 Perry on Trusts, par. 552; 17 Ruling Case Law, 635; 23 Ruling Case Law, 568; 16 Cyc., 630, 631.

This rule, it is true, has been somewhat relaxed by some later decisions relative to certain special conditions (21 Corpus Juris, p. 953, Improvements, and footnote citing authorities); but it is thought these were applied only to remainders vested at the time, not to contingent ones like that in this instance, which might never have eventuated into any title at all and did not in fact do so until more than a year later. 17 Texas Jurisprudence, Estates, I and II; Matter of Whitney, 75 Misc. 610, 136 N. Y. S. 633.

In other words, the city could not in these circumstances—through such involuntary proceedings, taken jointly against those who then were, respectively, merely the defeasible feeholder for life and the designated remainderman under an indeterminate contingency —so prospectively and nolens volens on their part burden a title in the Phelpses that never in fact came into being until long afterwards; especially so, it would seem, when the acts of the Legislature under authority of which the city made the assessment and issued the certificate were passed years subsequent to the taking effect of Susan Mitchell's will, wherein was contained the executory devise in their grantor's favor.

Further, since such paving assessments have been held with us not to constitute "taxes," as that term is generally understood, but local levies based on special authorization (23 Texas Jurisprudence, p. 427 et seq., pars. 1-11, inclusive), this ex post facto undertaking to fasten this one upon appellants by municipal compulsion would seem to contravene the terms of Susan Mitchell's pre-existing will creating the respective estates and executory devises here involved, in that she plainly contemplated that the whole property, free of incumbrances, should ultimately vest in the last survivor of her named devisees, whose rights the Phelpses hold. (See the will as quoted in Guess v. Phelps (Tex. Civ. App.) 41 S.W.(2d) 75, 76.

■ 6. Obviously no lien could ever have been fastened against the estate of Keelan or his administrators, for the reason that no interest in the property of any sort passed at any rate into his estate.

■■ Neither could the personal recovery against him and his administrators stand, for the reason that he was dead when the suit was first filed on September 5 of 1929, and it was never either alleged or shown that such money demand had ever been either presented to or rejected by his administrators, although an administration had been taken out soon after his death and was pending undisposed of at the time of this trial; since, as before shown, there had never been any uncertainty as to the extent, duration, and termination of his interest in the property, hence no equities nor uncertainties with reference to it that justified any direct resort to the district court, the claim for the money against his estate should have taken the prescribed course in the probate court. Revised Civil Statutes 1925, arts. 3522 and 3530; Texas Jurisprudence, vol. 14, p. 107, § 308, p. 112, § 351; Hare v. Reily (Tex. Civ. App.) 269 S. W. 473; Whitmire v. Powell (Tex. Civ. App.) 117 S. W. 433; Anderson v. Bank, 120 Tex. 313, 38 S. W.(2d) 768.

7. If, however, the foregoing conclusions are erroneous, and it should be held that the Phelpses were "owners" within the rule stated in Nalle v. Eaves (Tex. Com. App.) 5 S.W. (2d) 500, as the appellee contends, then they were on the dates of all these proceedings jointly such of this single piece of property, along with Frank C. H. Keelan, in definitely ascertainable portions each, which fact was coincidently not only an established one but also readily apparent, wherefore the assessment was void as to them all, because in a lump sum of $989.50 jointly against the three, neither defining their several interests nor providing any means by which each might discharge his individual liability nor procure a release of his particular interest, but undertaking to fix a joint and several liability against all for the total amount. 23 Texas Jurisprudence, p. 455, par. 25, and cited authorities; Uvalde Rock Asphalt Company v. Lyons (Tex. Civ. App.) 289 S. W. 202; Scanlan v. Gulf Bitulithic Co. (Tex. Com. App.) 44 S.W.(2d) 967, 80 A. L. R. 852; City of Dallas v. Atkins, 110 Tex. 627, 223 S. W. 170.

■ 8. The letter purporting to have been written by Edgar H. Phelps on August 7,

1928, to the Texas Pacific Coal & Oil Company, in which he undertook to advise that the assessment here involved was irregular in that it ran against Mollie Sanders Woods, Ed. S. Phelps, and Edgar H. Phelps,. whereas it should have run against Ed. S. Phelps, Edgar H. Phelps, and Frank Keelan as being the parties having an interest in the property, did not constitute an estoppel against appellants, denying to them the privilege of contesting the validity of the assessment in this suit, because there was no proof that the appellee, or any of its predecessors in title, relied upon this letter to their injury.

It is not deemed essential that the other questions presented in the briefs and arguments be specifically discussed, since the conclusions stated determine the merits of the appeal; the judgment reversing and rendering the cause, as hereinbefore recited, has already been entered, with Justice LANE dissenting.

Reversed and rendered for all appellants.

LANE, Justice (dissenting).

I respectfully enter my dissent from the acts of the majority of this court in reversing the judgment of the trial court and in here rendering judgment for the appellants.

As shown by the opinion of the majority, the city council of the city of Houston passed an ordinance authorizing the levy of an assessment against lot 1 in block 384, fronting on the street to be paved, and against its owner or owners, to pay a proportionate part of the pavement; that thereafter, to wit, on the 23d day of May, 1928, the city council duly levied an assessment against said lot and against Frank C. H. Keelan, Ed. S. Phelps, and Edgar H. Phelps, as owners of said lot, to raise funds to pay for the pavement laid in front of said lot; that on the next day, May 24, 1928, the paving certificate sued upon in this case was issued providing for payment by the owner of said lot of its or his pro rata of the cost of the improvement made. In the certificate it is recited that each coupon, five in number, is issued by the city of Houston, Tex., against Frank C. H. Keelan, Ed. S. Phelps, and Edgar H. Phelps, owners of the property. Such certificate was issued to San Jacinto Construction Company, or bearer, and was duly transferred by said company to Thurber Brick Company, plaintiff in this suit.

The will of Susan Mitchell provides that in the event Frank C. H. Keelan should die before Mollie Sanders Woods, the title to the lot should pass to the latter. While Frank C. H. Keelan was still living, Mollie Sanders Woods and her husband executed and delivered to Ed. S. Phelps and Edgar H. Phelps their deed purporting to convey to them the lot in question. Such deed was executed and delivered on the 1st day of November, 1926, about three years prior to the death of Frank

Keelan, who died August 15, 1929. The proceedings to have the street paved began long before Frank Keelan died, and all proceedings relative to such paving, up to making the levy and assessment above mentioned, substantially complied with the provisions of the law and the charter of the city. So it is apparent that at the time such proceedings began and at all times during such proceedings, including the levying and assessment mentioned and the issuance of the certificate, Frank C. H. Keelan owned the fee to the lot in question, and so far as the city council knew, might own it for many years to come and might continue to own it after the death of Mollie Sanders Woods. It is also apparent that had Mollie Sanders Woods died before Keelan the Phelpses would have gotten no title by virtue of their deed from Mollie Sanders Woods and husband.

No one named in the enabling ordinance in the assessment levy nor in the certificate, other than Frank Keelan, had any title to the property at any time during the proceedings mentioned; so it is apparent that no valid personal levy and assessment could have been had against either Ed. S. or Edgar H. Phelps. However, since the two Phelpses became the owners of the title to the property upon the death of Frank Keelan by virtue of their deed from Mollie Sanders Woods and husband, the holder of the certificate was, in the opinion of the writer, entitled to a foreclosure of the lien on the property created against it by the levy and assessment made against such property and its owner, Frank C. H. Keelan. The mere fact that the Phelpses owned no title to the property at the time all paving proceedings took place, including the levy, assessment, and issuance of the certificate, does not destroy the right of the owner of the certificate to a foreclosure of its lien on the property against the Phelpses, who hold an after-acquired title to the property. The Phelpses occupied the same position as a subsequent purchaser.

In section 6 of an act of the First Called Session of the 40th· Legislature (Acts First Called Session of the 40th Legislature 1927, pp. 489, 491, c. 106 [Vernon's Ann. Civ. St. art. 1105b, § 6]) it is provided as follows: "Any assessments against abutting property shall be a first and prior lien thereon from the date the improvements are ordered, and shall be a personal liability and charge against the true owners of such property at said date, whether named or not. The Governing Body shall have power to cause to be issued in the name of the city assignable certificates in evidence of assessments levied declaring the lien upon the property and the liability of the true owner or owners thereof whether correctly named or not, and to fix the terms and conditions of such certificates."

By article 2, section 2, subdivision (b) of the City Charter, it is provided as follows: "The

City shall have all powers that are or hereafter may be granted to municipalities by the Constitution or laws of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the Council."

Section 12 of the Charter of the City of Houston reads as follows: "Sec. 12. Passage of Resolution—Notice—The passage by the City Council of a resolution directing the improvement of any highway, or part thereof, shall operate as notice thereof and of the assessment and lien thereafter fixed upon property abutting said highway, as against all creditors or owners of such property and purchasers thereof, and the lien fixed by said assessment shall, without further proceedings or record, relate back to said resolution and be effective against said purchasers or creditors."

In view of the fact that at all times the proceedings relative to the pavement of the street were being had, including the levy of the assessment against the property and its owner and the issuance of the certificate sued on, Frank C. H. Keelan was the true owner of the property, I am of opinion that the governing body, the city council, had power to cause to be issued the certificate sued upon and to declare the lien upon the property, and that had Frank Keelan been living at the time of the trial of this suit the court could have correctly rendered personal judgment against him. I also think, under the provisions of section 12 of the City Charter above quoted, the passage by the city council of the resolution directing the improvement operated as notice thereof and of the assessment and lien thereafter fixed upon the property involved in this suit as against the Phelpses, who became subsequent owners of the property, and that the lien fixed by said levy and assessment did, without further proceedings of record, relate back to said resolution and effect a lien against the property as against the Phelpses which the trial court correctly foreclosed in appellee's favor.

In the opinion of the majority it is said that it is based upon undisputed evidence, and that upon such evidence a decree should enter here reversing the judgment of the trial court and rendering judgment for appellants. In such opinion it is declared that it is based, in the main, upon these considerations: "No lien for the paving done was valid against the property in the hands of the Phelps-appellants, because they were neither owners thereof nor had any title thereto, either on the dates the initial assessment and the certificate were issued, or when the cited amendments thereof were acted upon, not having

become invested with a title to it until the subsequent death of Frank C. H. Keelan."

I dissent from such conclusions of the majority, for the reasons I have above expressed.

I think so much of the judgment of the trial court as foreclosed the paving lien against the appellants Phelps should be affirmed.