## DUNAVANT *v.* FIELDS.

Opinion delivered January 5, 1901.

1. ACCOUNT STATED—IMPEACHMENT.—An account rendered, if not objected to within a reasonable time, becomes an account stated, and cannot afterwards be impeached by either party, save for fraud or mistake. (Page 540.)

2. SAME—RATIFICATION BY MINOR.—An account rendered to a minor becomes an account stated upon her subsequent ratification of it after becoming of age. (Page 540.)

3. TENANCY IN COMMON—REIMBURSEMENT FOR IMPROVEMENTS.—For improvements placed upon land by a tenant thereof in common, or by others holding under him, he will be indemnified in a suit in equity to partition the land, at least where his co-tenants are *sui juris*, either by having that portion of the land which contains the improvements allotted to him, or by compensation if the improvements are thrown into the common mass. (Page 541.)

4. TRUSTEE—REIMBURSEMENT FOR IMPROVEMENTS.—A tenant in common, who is trustee for his co-tenants, will be entitled to an allowance for money expended, but not for his personal services, in improving the land held in common, in the absence of a contract authorizing him to make such improvements. (Page 543.)

5. TENANCY IN COMMON—LIEN.—A tenant in common is not entitled to a lien on the interest of his co-tenant for his share of the proceeds of land and timber sold and rents collected by such co-tenant. (Page 543.)

Appeal from Mississippi Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

*James P. Clarke* and *Henry M. Armistead*, for appellant.

Mutuality is necessary to an account stated. 1 Wait, Act. & Def. 191; 38 Neb. 161; Beach, Cont. § 425; 63 N. Y.

631. The rendering of an account stated does not estop the creditor from correcting errors or omissions. 1 Wait, Act. & Def. 192; Whart. Cont. § 778. In an equitable partition, a tenant in common who has placed improvements upon land will be compensated or be allotted such portions of the land as will carry to him the improvements. 21 Ark. 539. A tenant in common is liable for only those rents actually received by him. 2 Am. & Eng. Enc. Law, 1098; 138 Mass. 584. Nor is he chargeable for rents and profits of an exclusive possession. 48 Ark. 135; 56 Ark. 624. On death of a legatee before the testator, the legacy lapses. 2 Woerner, Administration, § 434; 13 Am. & Eng. Enc. Law, 28; 18 Pick. 141; 15 R. I. 138; 5 Allen, 249; 1 Jarm. Wills, 293. It was error to decree the lien for the excess of rents. 52 Ark. 485; 56 Ark. 627.

*Henry Burnett* and *Rose & Coleman*, for appellees.

An account stated can be impeached for fraud or mistake. 41 Ark. 507; 21 Ark. 420; 16 Ark. 202; 13 Ark. 616; 12 S. W. 781; 107 U. S. 325; 45 Mich. 141; 28 Ark. 447. The mistake must be "some unintentional act, omission or error, arising from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence." Kerr, Fraud & Mist. 396. An account stated cannot be impeached by matters known to a party at the time of settlement. 26 Ill. App. 564; 93 Ga. 515; 80 Mo. 65; 71 Fed. 58; 64 Ark. 52. Nor on account of mistake due to negligence of the complaining party. 25 N. J. Eq. 48; Id. 66; 38 Minn. 454; 26 N. J. Eq. 434; 12 Cl. & F. 286. Or where he has been guilty of negligence in detecting the error. 2 Barb. 595; 54 Ala. 654. The evidence of mistake must be clear and convincing. 15 Ark. 277; 12 S. W. 781. Appellant's fiduciary relationship to appellees forbids his making any profit from their estate. 5 Johns. Ch. 388; 1 Story, Eq. 330; Bisph. Eq. § 92; 40 Ark. 393; 41 Ark. 104; 54 Ark. 635; 61 Ark. 575; Schouler, Dom. Rel. § 326; 49 Ark. 245; 2 Johns. Ch. 388; 114 U. S. 259; 150 U. S. 578; 159 Pa. St. 277; 92 Va. 144. Though the rule was different at common law, under Sand. & H. Dig., § 5917, a joint tenant in exclusive possession is answerable for rents and profits. 61 Ark. 547; *id.* 26; 56 Ark. 593. Appellant, having failed to

claim curtesy in the lower court, can not do so on appeal. 19 Mo. App. 287; 57 Mo. App. 400; 39 N. J. Eq. 303; 57 Ark. 638; 96 U. S. 267; 46 Ark. 103; 55 Ark. 217; 56 Ark. 263; *id.* 444.

BUNN, C. J. This is a bill in equity to partition the lands mentioned and described therein, between the plaintiff, Henry C. Dunavant, and the defendants, Georgia L. Fields, *nee* Lanier, and Julia Pelham, *nee* Dunavant, and to state an account between them, involving rents and profits, on the one hand, and expenses of improvements, taxes, etc., on the other. The lands were partitioned, and a decree entered by the Hon. E. D. Robertson, chancellor of the fifth chancery district, in favor of the defendant Georgia L. Fields, and against the plaintiff, for the sum of $454.54 and in favor of defendant Julia Pelham, and against the plaintiff, for the sum of $2,835.37.

This litigation grew out of the following state of facts, to-wit: Hattie C. Dunavant, the wife of the plaintiff, and mother of Georgia L. by her first husband, and of Julia by the plaintiff, on 7th of March, 1878, made her last will and testament, and departed this life in 1879, and her will was duly and in due time admitted to probate. The testatrix, by her said will, devised all her property of which she might die seized and possessed, consisting of the lands described in the complaint herein and 640 acres of other lands, equally between plaintiff and defendant Georgia L. Lanier, and a son, Harry Dunavant, and it was provided also that after-born children should come in and take equal shares with those named. Harry C. Dunavant died, unmarried, without issue and intestate, and his share went to the other devisees. Julia Dunavant was born after the making of the will. The plaintiff, Georgia L., and Julia became thus the sole devisees. The lands were to be partitioned when the defendants should reach their majorities, and until then the plaintiff was to have the sole management and control of the property devised. When the younger of the two children, Julia, had reached her majority, being unable to effect a partition otherwise, the plaintiff filed this bill for that purpose, asking to be reimbursed for the value of the improvements he had made on the lands described in the bill, and for

the expenditures he had made for taxes, and so forth, and for his costs, in excess of rents and profits he had received from the property, to the amount of six thousand dollars, two-thirds of which he claimed the defendants owed him, and that said two-thirds of that amount be paid by them, or that additional property to that extent be allotted to him in the partition.

Warning orders were duly issued for the defendants, who were both non-residents of the state at the time, and an attorney was appointed to defend for them as such, and afterwards, to-wit, on October 1, 1897, the defendants appeared by their solicitors, and filed their joint answer to the bill of the plaintiff, and, among other things, set up that for the ensuing year (1897) plaintiff had rented out the farm on said lands to various tenants (naming them) for the aggregate sum of $1,875, and averred that, if plaintiff should be permitted to collect said rents, they would lose their share of the same, as he had no property out of which the same could be made. Therefore they prayed an injunction against said renters, prohibiting them from paying said rents to plaintiff, and asked that a receiver be appointed to receive and collect the same, all of which was done. The injunction was issued by the county and probate judge of the county in the absence of the chancellor therefrom. In their answer the defendants deny that all the lands of which the testatrix had died seized and possessed were included in the complaint, but that 640 acres had been sold soon after the death of the testatrix, by the plaintiff, for the sum of $3,240, which he had never accounted for. They say also that, while the greater part of the lands were wild and unimproved, yet that there were thirty acres cleared and in good state of cultivation, when the plaintiff took charge of the lands described in the complaint. They deny that they are indebted to the plaintiff in the sum of $4000 ($6000) for costs and expenditures in making improvements on said lands, or in any other sum, but, on the contrary, the plaintiff is indebted to them for lands and timber sold and rents in the aggregate sum of $26,838, naming the several items. Defendants further allege that plaintiff had theretofore mortgaged his share of the

estate to one W. P. Hale for an amount equal to its full value. They pray for general relief.

Thereupon plaintiff filed an amendment to his bill, to the effect that, by the terms of said will, he was vested with the sole management and use of the lands in controversy until his co-devisees, the defendants herein, should become of age, at which time said lands should be divided between them, and that therefore he is not chargeable with nor accountable for any rents and profits (other than for lands and timber sold) arising from said lands, but that he is entitled to the full value of his improvements for taxes and other expenditures, amounting to the sum of $20,000. That he had expended upon defendant, Georgia L. Fields, the sum of $3,200 on acount of her education and maintenance, which he claims is a charge against her separate estate, and should be deducted out of anything he may owe her by way of rents and profits. Wherefore he asks that said will be construed to ascertain whether he is chargeable with the rents and profits; and, if not so, that he be allowed the sum of $3,200 against defendant Georgia L. Fields in adjusting the amounts that are due him under this controversy, and for general relief.

Thereupon defendants filed an amendment to their answer, in which they deny that the will contained the words set out in the amended complaint, and say that, on the contrary, said will did not devise the use of the lands, but only gave the management and control of same to plaintiff during their minorities. They say further that for more than eleven years after the death of the testatrix plaintiff charged himself and credited them each with one-third of the rents and profits, and on the 20th of November, 1889, rendered an account between himself and them, in which he showed defendant Georgia L, Fields to be indebted to him on a balance struck in the sum of $268. They say that plaintiff is estopped from going behind said stated account, and is estopped from adopting any other mode of charging and crediting either of these defendants. They say that, since the rendition of said stated account, plaintiff has collected the sum of $12,000 in rents; that he had already sold land to the amount of $3,200, making in the

aggregate the sum of $15,240, and has not accounted for the same, one-third of which belongs to each of these defendants; that is, each is entitled to the sum of $5,080 from the plaintiff. They deny that plaintiff had power, under the will, to make the improvements for which he makes his claim, and allege that he agreed with the testatrix that he would support and educate the defendants, and she gave him a valuable consideration therefor, to-wit, a residence and lot. They deny that he has paid over to Georgia L. Fields anything except her share of a $1,030 claim against the United States government. They say that plaintiff had no right nor intention to charge for his personal services in managing said property, and deny that he had expended any money in improvements upon the lands, except in horses, well, fencing, etc.

The clerk of the trial court was appointed special master to take and state an account between the parties upon the evidence in the case, which was done, and to the master's report both parties excepted; the defendants taking exception to most of the items in it. The commissioners to partition the lands made their report, and this was excepted to by defendants on various grounds, and the receiver to collect the rents for 1897 also made his report, and this was not the subject of exceptions on the part of either, and was treated as correct.

The chancellor held, in construing the will, that plaintiff was not entitled, by its terms, to the use of the lands during the minority of the defendants, but only to their management and control, and therefore chargeable with rents and profits. He also held that the account or statement made on the 20th of November, 1839, should be treated as a stated account, and he therefore sustained the exceptions to the master's report as to all matters arising before that date, except such as were admitted to be true and correct, and should have been included therein, and that said stated account showed the state of account between the parties up to that date by which all parties are bound, and accordingly found and decreed that plaintiff was indebted to defendant Georgia L. Fields in the sum of $454.54, and to defendant Julia Pelham in the sum of $2,835.37, and judgment was rendered therefor, and execution awarded as at

law, and said judgments were declared to be liens on the plaintiff's share and interest in said property. The chancellor also overruled the objections to the report of the commissioners to partition the lands, and confirmed the same.

There is apparently no discrepancy between the finding of fact by the master and the chancellor. The chancellor held that one or more items arising before the stated account, and not included therein, were improperly considered by the master as reopening the stated account. He also held that no interest pro and con should be taken into account in such a settlement as this, whereas the master had included interest pro and con in his statement of the account between the parties. There was evidence to sustain the chancellor in his finding, as there was also to sustain the master's report. In fact, the difference between the two was not one of fact, but one of law; that is, as to what was and was not allowable as credits to plaintiff. The chancellor was correct in his construction of the will, for by its terms neither the word "use" nor any equivalent is employed therein, and the plaintiff was chargeable with the rents and profits.

Whether or not the statement furnished Georgia L. Fields in 1889 should be treated as a stated account binding all the parties presents another question of law. "Where parties have had mutual dealings, and one renders to the other a statement purporting to set forth all the items of indebtedness on the one side and of credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot afterwards be impeached except for fraud or mistake." *Lawrence* v. *Ellsworth*, 41 Ark. 502. This definition of a stated account is taken from *Oil Co.* v. *Van Etten*, 107 U. S. 325. The same doctrine is held in *Weed* v. *Dyer*, 53 Ark. 155, and in fact is universally so held, so far as our researches go. Under that rule the account rendered by the plaintiff to defendant Georgia L. Fields has all the essential elements of an account stated, and, unless there is something else to affect its character as such, it must be so treated.

It is not precisely stated anywhere in the record, but we infer that the defendant Georgia L. Fields at the time of the

rendition of this stated account to her was of age, and her failure to make objection to it estops her from objecting to it now, except on the ground of fraud or mistake; and by the same rule the plaintiff is also bound by it; and we may well conclude that the charge for proceeds of land sale, not found in the stated account, but which plaintiff concedes to be a proper charge against him, was left out by inadvertence or mistake.

But the stated account was not rendered to the defendant, Julia Pelham, for at the time she was a minor, and could not be bound by any implied assent to the correctness of it. But she was of age when this suit was instituted, and when she answered jointly with her co-defendant. If, in said answer, she in effect relied upon the statement as an account stated, and conceded it to be a settlement of all matters between the parties up to that time,—in other words, if, after becoming of age, she ratified the same as a settlement of all matters, subject to correction for fraud or mistake only,—then it is but fair to conclude she is also bound by said stated account in so far as the same effects her. Prior to the 20th of November, 1889, her individual account was little or nothing, and she is only interested in matters arising upon the care, improvement and renting of the farm and the sale of lands and timber up to that time. In our view of the subject, it matters little whether or not the items accruing prior to the making of the stated account, but which were not included in it, should not be left out under the rule stated, for the only remaining ones left in this situation were the items for clearing, fencing and putting the 450 acres of the land in a good state of cultivation at the rate of $30 per acre; and this is not, and could not be, a proper charge against the defendant, for another and distinct reason— that is, because it is, in effect, a charge for the personal services of one sustaining a fiduciary relation not provided for by law against minors who are incapable of making contracts to that effect.

In his relation as tenant in common one has a right to make improvements on the land without the consent of his cotenants, and, although he has no lien in such case upon the

land for the value of the improvements, yet he will be indemnified for them, whether made by himself or those holding under him, in a proceeding in equity to partition the lands between himself and co-tenants in common, either by having the part upon which are the improvements allotted to him, or by compensation, if thrown into the common mass. The reason of the rule is that the common estate is permanently benefited and enhanced in value, and all should contribute to it. *Drennen* v. *Walker*, 21 Ark. 539. That is the rule where the tenants in common are *sui juris*, and it is doubtless more liberal towards the claimant for improvements, since the others interested in such case are the better able to guard against abuses in this direction than minors are.

In *Clements* v. *Oates*, 49 Ark. 242, this court said: "The law forbids a trustee, and all other persons occupying a fiduciary or *quasi* fiduciary position, from taking any personal advantage touching the thing or subject as to which such fiduciary position exists; or, as expressed by another, 'wherever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in the subject antagonistic to the person with whose interest he has become associated.' *  *  * This rule applies to tenants in common by descent with the same force and reason as it does to persons standing in a direct fiduciary relation to others." There is no perceptible difference, in this regard, between the case of tenants in common by descent, and that of tenants in common by devise. Moreover, the plaintiff in this case occupied not only a fiduciary position as tenant in common, but by direct appointment of the testatrix, the common source of title. In *Trimble* v. *James*, 40 Ark. 393, this court said: "It is an inflexible rule that all profits made by a trustee must enure to the benefit of the *cestui que trust;* and if an administrator or his attorney buy up claims against the estate at a discount, the profit enures to the heir, although the purchase be made by borrowing money at ruinous rates of interest and the sale of his own property,

and the estate be thereby saved from insolvency." ' Such is the strictness of the rule.

In the case at bar, the plaintiff was allowed for his outlay of money in making improvements, but he was not allowed for his personal services, which he insists should be paid him. This charge for services consists in an item as follows: Thirty dollars per acre for clearing and putting in a good state of cultivation the 450 acres included in said farm—that is to say, a mere estimated amount. He could not thus speculate upon the estate, or take an advantage of the kind to himself in relation thereto. *Imboden* v. *Hunter*, 23 Ark. 622. The law would not permit him to go further than to seek reimbursement for money actually paid out on the improvements, in the absence of a contract authorizing him to make them. This item for personal services the chancellor disallowed, for the reason, apparently, that they were not included in the stated account. They were not allowable for the other reason just stated.

The item of $3,240 for land and timber sold, we infer, was left out of the stated account by oversight. At all events, it was finally admitted by the plaintiff to be a correct charge against him.

The master charged interest pro and con on all items of credit and debit, which the chancellor declined to do, holding that the circumstances showed this to be a case in which interest would not be allowed for or against either party. These constitute the substantial differences between the findings of the master and those of the chancellor. We have seen that the chancellor was correct as to items for personal services; and as to the interest, the error, if it was an error, is not insisted on by the defendants, and is to the benefit, if anything, of the plaintiff.

Therefore, as to the balance struck and the decree therefor, the same is affirmed, as is the decree as to the report of the receiver and the commissioners to partition the lands. Also as to the mortgage of the defendants. But, in so far as the decree seeks to make the balance due from plaintiff to defendants a lien on the plaintiff's interests in the land, the decree is reversed, since there is no lien on lands for rents by

operation of law in this state, and for other reasons there is no lien in favor of the other tenants in common upon the interest of the co-tenant for any sum he may owe them. *Hamby* v. *Wall*, 48 Ark. 135; *Bertrand* v. *Taylor*, 32 Ark. 470; *Brittinum* v. *Jones*, 56 Ark. 624; *McKneely* v. *Terry*, 61 Ark. 527.

The decree is affirmed in all things except as to the lien in favor of the appellees on the interest in the lands of appellant to secure the amounts decreed. It is reversed as to that, and the cause is remanded, with directions to foreclose the mortgage to Hale and the others.