SWIFT *v.* SWIFT.

Opinion delivered November 29, 1915.

1. STATUTE OF FRAUDS—DIVISION OF LAND—ORAL CONTRACT BETWEEN TENANTS IN COMMON.—Two brothers purchased eighty acres of land together and entered into possession of the same. *Held,* an oral agreement between the brothers that one take the north forty acres and the other the south forty was not within the statute of frauds, where valuable improvements were made by one of the brothers.

2. STATUTE OF FRAUDS—ORAL CONTRACT BETWEEN TENANTS IN COMMON—VALUABLE IMPROVEMENTS.—Temporary improvements of inconsiderable value are not sufficient to prevent the operation of the statute of frauds on an oral contract of two tenants in common of certain land, that the one should take the north half and the other the south half of the land; but where the improvements are lasting and of considerable value, the statute does not apply, and it makes no difference although benefits accrue from the improvements to the occupying claimant who has made the improvements.

Appeal from Lincoln Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*E. W. Brockman,* for appellant.

The trial court erred in finding that a verbal agreement between cotenants is enforceable in this State, where one cotenant does not take possession under the agreement. 68 Ark. 534.

If the defendant is to be allowed for the improvements, then plaintiff should have an accounting for the rents of the land for the time he held same. 52 Ark. 473; 77 Am. St. R. 502.

A verbal agreement for partition between cotenants can not be enforced in this State. Their contracts should be in writing and duly signed. 44 Ark. 79; 2 Am. Dec. 436; 46 Pa. 376; 135 Pa. 371; 5 Conn. 363.

*Crawford & Hooker,* for appellee.

The agreement alleged was made and not denied. Kirby's Digest, § 6137; 56 Ark. 73.

The evidence fully sustains the court's finding. 99 Ark. 128; 81 Ark. 68; 78 Ark. 275; 104 Ark. 9; 173 S. W. 394.

The statute of frauds can not be plead when valuable improvements have been made under a verbal agreement. 1 Ark 391; 42 Ark. 246; 77 Ark. 309.

Voluntary partition of land may be established by competent evidence. 21 Am. & Eng. Ency. of Law, 1141; 37 U. S. App. 436; 64 Ala. 410; 107 Ala. 251; verbal partition of land may be upheld. 84 Ark. 584; Freeman on Cotenancy and Partition, section 402; 21 Am. & Eng. Ency. of Law (2 ed.) 1139; 84 Ark. 584; 64 Ark. 19; 2 Am. Dec. 436.

It would be the duty of equity to cause these improvements to be assigned to their respective owners. Freeman on Cotenancy and Partition (2 ed.), section 509; 21 Ark. 557; 23 Ark. 213.

A cotenant is not chargeable with the use and occupation. Freeman on Cotenancy and Partition (2 ed.), section 509, and cases cited in note 3; 45 Iowa 693; 4 Ark. 525; 10 Ark. 53; 42 Ark. 542.

McCulloch, C. J. The two parties to this suit are brothers, and they owned, as tenants in common, a tract of land in Lincoln County, Arkansas, containing eighty acres, which they purchased from E. J. Hall in October, 1899. This is an action instituted in the chancery court of Lincoln County by appellant in which he seeks to have the land partitioned. Appellee answered, alleging that at the time of the purchase from Hall he and his brother, the appellant, entered into an oral agreement for the partition of the land, he taking the south forty and his brother the north forty, and that pursuant to that arrangement he entered into possession and made valuable improvements. He asks that that agreement be enforced.

The chancellor found that there had been an agreement made between the two owners with respect to the division of the land, and that the agreement was valid and enforceable by reason of the fact that appellee had entered upon the land pursuant to the agreement and made valuable improvements.

There is a decided conflict in the testimony, but we are of the opinion that the chancellor's finding as to the facts is in accordance with the preponderance of the evidence. It appears from the testimony that appellee entered into a verbal agreement with Hall for the purchase of the land for the sum of $200, and that in pursuance to that agreement he entered upon the south forty and cleared up a few acres and built a small house. Later he found that he would be unable to pay for the whole tract and he left the place and sought his brother, the appellant, who resided in another county, and proposed to him that they buy the land together, and that he (appellee) should take the south forty and that appellant should take the north forty. Pursuant to those negotiations the two brothers purchased the land from Hall and received deed therefor, each of them paying the sum of $100. Appellant denies that he made the agreement for division of the land, and states that all that was said on the subject of appellee taking possession and using the land was that appellee could have the privilege of using any land that he should clear up and improve until such time as they should see fit to divide it. The evidence shows that appellee built on the south forty one house of the value of about $400 and another of the value of $75, and that he cleared, fenced and put in cultivation twenty-six or twenty-seven acres of land, dug ditches and drove wells. The testimony of the different witnesses varies as to the cost of clearing land, but there is sufficient evidence to justify the finding that the improvements on the land cost appellee the sum of $1,160. In addition to that he paid taxes on the whole tract from the time of the purchase in 1899.

It is contended by counsel for appellant that even on the facts as found by the chancellor the alleged agreement for partition was within the statute of frauds and unenforceable. The rights of a tenant in common under an oral agreement for partition was clearly announced by this court in the case of *Dunavant* v. *Fields*, 68 Ark. 534, as follows: ''In his relation as tenant in common

one has a right to make improvements on the land without the consent of his cotenants, and, although he has no lien in such case upon the land for the value of the improvements, yet he will be indemnified for them, whether made by himself or those holding under him, in a proceeding in equity to partition the lands between himself and cotenants in common, either by having the part upon which are the improvements allotted to him, or by compensation, if thrown into the common mass. The reason of the rule is that the common estate is permanently benefited and enhanced in value, and all should contribute to it.''

This case is relied upon by counsel for appellant as sustaining their contention that appellee should not be allowed the value of the improvements for the reason that it involves compensation for personal services. It is true it was held in that case that where one cotenant gave his personal services towards improvement of the lands, he could not claim compensation therefor. That case involved however, the rights of one who stood in the relation of trustee to a cotenant who was not *sui juris,* and the claim was one for purely personal services in the way of supervision of the clearing of the land. The court allowed the full amount expended in making the improvements, but refused to allow the item for personal services. That case is not similar to the present one, for in this case only the actual cost of clearing the land was taken into consideration by the chancellor.

The facts of this case bring it clearly within the decision of this court in the case of *Ellis* v. *Campbell,* 84 Ark. 584. The opinion in that case quotes with approval the rule laid down by Mr. Freeman, in his work on cotenancy (section 402), as follows: ''Whatever effect may be conceded at law to parol partitions, we think it quite certain that, when executed by taking possession thereunder, they will be recognized and enforced in equity, particularly when such a partition and the possession

based upon it have been mutually acquiesced in by the parties for a considerable period."

The court then added the following with reference to the law applicable to that particular case: "But in this case there was not only possession taken by the brother and sister, as the court found, but each made lasting and permanent improvements, and the making of improvements of that character is in and of itself such performance as takes a contract out of the statute of frauds."

In the present case the proof shows that the rents and profits of the land cleared and occupied by appellee amounted to a considerable sum, but that does not lessen the effect of the making of valuable improvements in taking the contract out of the operation of the statute of frauds. Temporary improvements of inconsiderable value are not sufficient to prevent the operation of the statute of frauds on a contract of this sort; but where the improvements are lasting and of considerable value, the fact that benefits accrue therefrom to the occupying claimant who has made the improvements does not leave the transaction within the operation of the statute of frauds. A court of equity will not stop to weigh with nicety the actual benefits derived from the transaction if there has been a performance of such a contract as this by entering into possession and making valuable improvements. It would operate as a fraud to allow the other party to take advantage of the fact that the contract had not been reduced to writing, and for that reason a court of equity will enforce the contract in order to protect the rights of the parties. That principle applies, we think, to the facts of this case, and the chancellor was correct in deciding in appellee's favor.

Decree affirmed.