BANK OF COMMERCE OF EARLE *v.* FAIRBANK.

Opinion delivered April 3, 1922.

1. MORTGAGES—ABSOLUTE DEED AS SECURITY.—The chancellor's finding that a deed absolute on its face was intended as a mortgage *held* sustained by the evidence.

2. INTEREST—ALLOWANCE OF COMPOUND INTEREST.—Where a loan was made in a foreign country in which it was customary to compound interest, it was not error to charge the borrower compound interest in ascertaining the indebtedness due to the lender.

3. ACCOUNT STATED—FAILURE TO MAKE OBJECTION.—An account rendered, after lapse of a reasonable time, without objection by the debtor, becomes an account stated.

4.  TENANCY IN COMMON—LIABILITY FOR IMPROVEMENTS.—A tenant
    in common is not required to contribute to permanent improve-
    ments made by his cotenant without his knowledge or consent.

5.  MORTGAGES—BAD FAITH OF TRUSTEE.—EVIDENCE.—Evidence held
    insufficient to prove that a trustee who held land for purpose of
    sale acted in bad faith in selling it for less than the market price.

6.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—
    Findings of fact made by a chancellor will not be disturbed on
    appeal unless against the preponderance of the evidence.

Appeal from Crittenden Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellant brought this suit in equity against appellees to recover judgment on certain notes executed to appellant by William English, and to have a deed, absolute on its face, executed to Isaac Greenizen by the other appellees declared to be a deed of trust. and for an accounting between the parties.

Appellant states that it has a second mortgage on said lands to secure it in a large indebtedness owed it by English, and asks that an attachment be levied on said lands.

Appellees defended on the ground that the conveyance of the lands to Greenizen by the other appellees was an absolute conveyance, and that, if such conveyance be declared a deed of trust, the property embraced therein is not sufficient to pay the indebtedness mentioned therein.

It appears from the record that in 1907, J. H. Fairbank and William English of Petrolea, Ontario, Canada, purchased something like 4,300 acres of land in Crittenden and Cross Counties, Ark. Fairbank conducted a banking business in the town of Petrolea and furnished the money with which to purchase the lands. The title was taken in the name of English, but it was agreed between the parties that Fairbank should have a fourth interest and English a three-fourths interest in the lands. The lands were principally timber lands, and they operated a sawmill on them for about six years. English

came to Arkansas and had personal charge of the mill. Fairbank furnished the money with which they operated it. English put about three hundred acres of the lands in cultivation. Their lumber business was not profitable, and on July 31, 1913, English owed Fairbank $43,005.25. On that date English conveyed all of said lands to Fairbank, and on the same date Fairbank reconveyed to English an undivided three-fourths interest in said land, reserving a lien thereon to secure said debt of $43,005.25. After this time English operated on his own account and cleared and cultivated a part of the lands, using them for his own benefit. Fairbank, however, made English additional loans of money. Fairbank died testate on February 24, 1914, leaving surviving him a son, C. O. Fairbank, and a daughter, Mary Edna Rock, as his sole heirs at law and the devisees under his will. The children of J. H. Fairbank, deceased, became his executors and as such made further advances to English until his indebtedness to the Fairbank estate amounted to something like $140,000 on November 22, 1916. On this date, William English and his wife and C. O. Fairbank and Mary Edna Rock individually, and as executors of the estate of J. H. Fairbank, deceased, united in a conveyance of all said Arkansas lands to Isaac Greenizen, a solicitor and barrister of Petrolea, Ontario, and the representative of the Fairbank estate.

According to the testimony of Greenizen, this conveyance on the part of English was absolute, and Greenizen held the title as trustee for the Fairbank estate in order to facilitate future sales and conveyances of the lands.

According to the testimony of English, the instrument was intended as a deed of trust to secure the indebtedness that English owed the Fairbank estate. On November 23, 1916, Greenizen leased to English for the years 1917, 1918 and 1919 about 600 acres of said lands which had been cleared, at an annual rental of $6,000. English did not pay the rent for 1917, and in May, 1917, Green-

izen obtained judgment against him for $6,000, with interest from November 15, 1917.

Subsequent to the execution of the deed to Greenizen and after it was filed for record, English, on February 19, 1917, executed to appellant and another bank in Memphis, Tenn., a mortgage on said lands for $30,000, which is now due and unpaid. The Memphis bank duly transferred its mortgage and the debt it was given to secure to appellant. At the time of the conveyance to him by English and Charles O. Fairbank, and Mary Edna Rock, Greenizen was given the power to sell said lands after paying off the mortgage indebtedness of English to account to him for his share of the proceeds according to his interest in the lands. In May, 1917, and in April, 1918, when making title to certain of said lands to certain purchasers, Greenizen discovered other encumbrances which English had placed on the lands before the deed to Greenizen was executed, and paid off same. The amount of one of these incumbrances was $5,650.60, and the other amounted to $7,552.30. Greenizen made sales of all of said lands except two tracts, and had made executory contracts for the sale of these two tracts at the time this controversy arose. After paying the proceeds of English's three-fourths interest in the lands towards the satisfaction of his mortgage indebtedness to the Fairbank estate, English was still in debt to that estate in the sum of $20,582.42 on December 31, 1918.

Other facts will be stated in the opinion.

The chancellor made a special and general finding of fact in favor of Isaac Greenizen and C. O. Fairbank and Mary Edna Rock individually and as executors of the estate of J. H. Fairbank, deceased, and it was decreed that the complaint of appellant be dismissed as to it for want of equity. The appellant was given judgment against William English in the sum of $30,000.

To reverse that part of the decree which was against it, appellant has duly prosecuted an appeal to this court.

*Ewing, King & King* and *Hub Blair,* for appellants.

*Hughes & Hughes,* for appellees.

HART, J. (after stating the facts). We are of the opinion that the chancellor was right in holding that the conveyance of the Arkansas lands by William English and C. O. Fairbank and Mary Edna Rock to Isaac Greenizen, although absolute on its face, was intended as a deed of trust to secure the Fairbank estate in the amount owed it by English, and that the title was placed in Greenizen to enable him to sell the lands and to account to the parties for their respective interests after the mortgage indebtedness was taken out of the share of the lands owned by William English. This was the construction put upon the instrument by the parties themselves. Greenizen was allowed to take charge of the lands and to begin to sell the same, and to account to the parties for the proceeds according to their respective interests, and to apply the proceeds from the sale of the interest of English towards the satisfaction of his mortgage indebtedness to the Fairbank estate. There is no dispute between the parties as to their respective interests in the lands, or to the principal of the mortgage indebtedness of English to the Fairbank estate.

Counsel for appellant, however, contend that there is an error against English in a large amount on account of interest charges. In other words, it is claimed that the court erred in allowing interest in favor of the Fairbank estate against English calculated at the rate of 6% per annum on monthly or quarterly balances.

According to the testimony of English, J. H. Fairbank, in his life time, promised to adjust the interest account between them on an equitable basis.

A. M. McQueen, under power of attorney from the executor, was in full control of the estate of J. H. Fairbank, deceased, until May, 1916. He had also been in charge of the Fairbank estate from 1892 to the time of the death of J. H. Fairbank. According to his testimony, accounts were rendered by the bank to English at stated

intervals. These accounts showed that 6 per cent. per annum was charged English. This was the lowest and the customary bank rate. It was the general banking custom in Ontario to compound interest monthly on overdrafts, but, where notes were given to cover overdrafts, the custom was to compound the interest quarterly. English's bank pass book and the statement of his accounts was submitted to him periodically, perhaps monthly, and the accounts so submitted to English included the interest charges; and at no time while McQueen was bank manager did English in person, or through another, make any complaint about the interest charges.

Greenizen testified that English never made any complaint to him that the interest charged on his accounts was excessive, but, on the contrary, admitted the correctness of his accounts on more than one occasion.

C. O. Fairbanks testified that he made no agreement with English relative to any matter in the case. It was shown that these bank statements were regularly submitted to English's agent in Canada while English was in Arkansas.

It also appears from the record that English made periodical trips back to Ontario. It does not appear that McQueen has any interest whatever in this case. If his statement about the submission of the accounts to English's agent in Ontario is not correct, that fact could have been easily established by such agent. It was the duty of English to have examined his accounts when they were delivered to him by the bank and to have notified the bank in a reasonable time that the charges were improper, if he deemed them to be so. It will be remembered that the bank belonged to J. H. Fairbank, and the account it rendered to the agent of English of the state of the accounts between English and J. H. Fairbank became a stated account when English failed to object to the same within a reasonable time after they were delivered to him. *Citizens' B. & T. Co.* v. *Hinkle,* 126 Ark. 266.

Appellant could have no greater rights in the premises than English. Therefore, the chancery court did not err in holding against appellant on the item of interest charges.

In connection with the interest charge, the contention is made that it was unlawful to charge compound interest. Isaac Greenizen was a practicing barrister and solicitor of Petrolea, Ontario, and as such has been engaged in the practice of the law there for many years. He had represented J. H. Fairbank as attorney for many years prior to his death in 1914, and since that time has represented the estate. Greenizen stated further that he had been familiar with banking transactions in that country for over thirty years, and knew that it was the custom of banks in Ontario to charge interest at the rate of 6 per cent. on loans of money and to compound the interest quarterly, and that such compounding of interest was legal in Ontario.

As we have already seen, McQueen, who had charge of the bank until in 1916, testified to the same fact. Hence the transaction was not an illegal one, and, as above stated, the accounts became accounts stated after the lapse of a reasonable time after their delivery to English.

It may also be stated that counsel for appellant claim that the court erred in not allowing English for the amounts expended by him in clearing some of the lands. We do not agree with counsel in this contention. It will be observed that Fairbank and English were tenants in common in the lands, and that English owned a three-fourths interest therein. The lands were principally timber lands, and it was expected that their chief profit would be derived from the sale of the timber. Fairbank furnished English with money with which to cut and remove the timber. English, after cutting the timber off of the lands and disposing of it, cleared and cultivated a part of them. The lands were situated in Arkansas, and English acted for his own benefit in clearing and cultivating them. Fairbank remained in Ontario, and

it does not appear that he knew anything about English clearing the lands and cultivating the same. English collected the rents and used them. Under these circumstances Fairbank would not be required to contribute to the permanent improvement of the lands made without his knowledge or consent. *Dunavant* v. *Fields*, 68 Ark. 534, and *Lemly* v. *Works*, 138 Ark. 426.

It is next contended that Greenizen committed a breach of trust in his disposition of the lands. It will be remembered that when the deed to Greenizen to the lands was executed by William English and C. O. Fairbank, and Mary Edna Rock, on November 22, 1916, it was contemplated that Greenizen should sell the lands and distribute the proceeds between the parties according to their respective interests, after satisfying the mortgage indebtedness of English out of his interest. English had a three-fourths interest in the lands, and the Fairbank estate a fourth interest in the lands. Greenizen had sold all of the lands except two tracts and had applied English's share towards the satisfaction of the mortgage indebtedness before the present controversy. It is not contended by counsel for appellant that Greenizen was guilty of any breach of trust with regard to these sales, but it is contended that Greenizen was guilty of a breach of trust with regard to the remaining tracts which he had made an executory contract to sell at the time the present controversy arose.

It is contended by counsel for appellant that Greenizen had contracted to sell these lands for $40 per acre and less, when in fact they were worth and he could have sold them for $60 to $65 per acre. Witnesses for appellant testified that the lands in question were worth $65 per acre and upwards and that Greenizen sold them for $40 per acre, and that he had sold one of the tracts to his own agent for something less than $40 per acre.

On the other hand, witnesses for appellees stated that Greenizen acted in perfect good faith in the matter and sold the lands for all that he could get for them. He employed local agents to sell the lands with direc-

tions to sell them for the best price obtainable. The local agents bargained to sell both of these tracts for the best price obtainable, but the sale was prevented on account of the present controversy. Subsequently one of the local agents told Greenizen that he would take the lands at the price he had sold them for, if Greenizen would deduct his commission from the purchase price. Greenizen agreed to do this. This act resulted in no loss to the estate. For, if the sale to the third party by the agent had been carried out, the local agent making the sale would have been entitled to his commission and the purchase price would have been reduced by that amount. The local agent and other witnesses for appellees testified that the lands were sold for the best price obtainable and that the price which they sold for was a fair one.

One of the witnesses for appellees testified that other lands had been sold in the same neighborhood for a somewhat less price. Three witnesses on each side testified with regard to the price for which the lands were sold. Those for appellant maintained that the lands were sold too low, and those for appellees being equally positive that the lands sold for all they could have been sold for, and for all they were worth.

Greenizen rendered a full account of all his acts as trustee, and there is nothing in the record which tends to reflect upon his conduct. At any rate, the chancellor found the issues with regard to his alleged breach of faith in the sale of the lands in his favor, and it cannot be said that his finding is against the weight of the evidence and on that account should be reversed.

It may be here noted that, under the settled and familiar rules of practice, the findings of fact made by a chancellor will not be disturbed on appeal unless they are against the preponderance of the evidence.

Complaint is made against the trustee with regard to other items of his account. But the chancellor found the issues in his favor, and we cannot say that his finding is against the preponderance of the evidence. We

do not deem it necessary to discuss these matters in detail, for the reason that, even if it should be said that the finding of the chancellor as to them is against the weight of the evidence, no error prejudicial to the rights of appellant would be committed. The reason is that the aggregate amount of these omitted items would not total by a good deal the amount of the balance of the mortgage indebtedness of English to the Fairbank estate. English has not appealed..

It follows that the decree will be affirmed.