PHIL. CLAIBORNE AND OTHERS v. SUSAN C. TANNER'S HEIRS.

Where the deed to real property is taken in the name of the wife, and part only of the purchase money or consideration is her separate property, and her husband gives his note for part of the purchase money, upon which judgment is afterwards obtained, without making the wife a party to the suit, a sale by virtue of execution on such judgment will only pass the interest of the community, and the separate interest of the husband, if any, and not the separate interest of the wife, corresponding to the proportion of the consideration paid out of her separate property.

Where the father of the wife loaned a certain slave to her and her husband in Alabama, and they brought said slave to Texas, without the father's consent, and in 1841 the husband and wife joined in a bill of sale of him in part payment of a tract of land, the deed for which was taken in the name of the wife, and in 1842, before the father's claim was barred by limitation, he released said slave to the wife without price, it was held that the rights of the wife in the land for which the slave was given in part payment, were the same as if there had been no adverse possession of the slave by the husband and wife, and the gift to the latter had been made before the purchase of the land.

See this case for what is said as to circumstances which will cause the adverse possession of a slave by the husband and wife to enure to the benefit of the latter, so as to make the slave her separate property.

Where the issue was as to whether a slave which had been given in part payment for the land in controversy, was the separate property of the wife or not, and the trial was at the Fall Term, 1854, and the representatives of the wife proved by oral testimony, without objection, that in 1842 the wife wrote to her father in Alabama asking him to give her the slave, and he gave her the

Claiborne v. Tanner.

slave, it was held that the Court properly refused to instruct the jury, that if they believed from the evidence that letters were written between the father and wife in relation to the slave, then the failure to produce said letters in evidence, without good excuse, raised a presumption in law against the oral testimony introduced to prove the contents of the letters, and that the jury were authorized from such circumstances, to regard the oral testimony with suspicion.

There can be no clearer principle, than that, where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The Court cannot look to the evidence on which the verdict was found, in order to determine what judgment to render, but must look alone to the verdict.

Where the plaintiffs claimed under the wife, and the defendants under the community, and the jury found a special verdict that the land was paid for by a slave, the separate property of the wife, and a yoke of oxen, the property of the community, without finding the value of either, it was held that the Court could not look to the evidence, although there was no conflict, to ascertain the respective values of the slave and oxen, in order to make up the decree ; and a new trial was ordered.

Error from Travis.    Tried below befor the Hon. John Hancock.

Suit by defendants in error against the plaintiffs in error to recover six hundred and forty acres of land.

The petition alleged that Susan C. Tanner, the mother of the plaintiffs, died on the——day of——, 184—, (by amendment afterwards alleged to have been the latter part of the year 1847,) seized and possessed of the land in controversy as her separate property ; that on the 10th day of March, 1843, James Craft had obtained a judgment for $660 13, against Joseph R. Tanner, the husband of Susan C. Tanner, which said judgment remained unsettled until after the death of said Susan, when the same was revived, and execution issued thereon, and levied upon the land in question, which was sold, and Philip Claiborne and Williamson S. Oldham, the defendants, became the purchasers, for the price of $900. The petition further alleged that the sale was null and void, and prayed

the Court to set it aside and decree the land to be the property of the plaintiffs in right of their mother.

The answer denied that the land was the separate property of the said Susan C. Tanner at her death, but alleged that it was community property between her and her husband, and as such liable to Craft's execution, which defendants alleged was issued on a judgment recovered on a note given in part payment for this same land. The answer admitted the other facts alleged in the petition.

Trial at the Fall Term, 1854. The evidence was as follows : Conveyance of the land in controversy, dated 12th day of May, 1841, by James H. Haynie to Susan C. Tanner, for the consideration of twenty-two hundred dollars, expressed therein.— Filed for record same day.

John Caldwell, a witness for the plaintiff, testified that he received from Joseph R. Tanner a negro boy named Frederick and a yoke of oxen, and gave up a note for twenty-two hundred dollars, which had been given to James H. Haynie for the land in controversy ; that the conveyance of the negro was signed by Mr. and Mrs. Tanner ; that witness had sold to Haynie a league of land of which the tract in dispute formed a part ; that Haynie being still indebted to him for the league of land, a proposition was made to him by Haynie and Tanner to take the boy Frederick at the amount that was due Haynie (from Tanner) on the tract of land, say tweenty-two hundred dollars ; that he took the boy and a yoke of oxen, and allowed Haynie credit for the full amount of Tanner's note, say $2200 ; that he did not estimate the property to be worth so much in money ; would not have valued the boy at more than $600, and the oxen at $40. Did not know whether the boy belonged to Mr. or Mrs. Tanner ; the bill of sale was signed by both ; still owned the negro, he was thirty-five years old and crippled, which depreciated his value one-half ; that when he received him, he was as likely a young negro as could be seen anywhere, but was slightly lame ; did not then inquire into

the cause, not thinking it serious. Could not not say positively, but was strongly impressed with the belief that the note for $2200 was executed by Tanner to Haynie ; thinks it was given up to Tanner at the time he, witness, received the negro. Executed no title, that he recollected, to Mr. or Mrs. Tanner ; did not know why or under whose direction or desire the title was made to Mrs. Tanner.

The bill of sale from Joseph R. Tanner and Susan C. Tanner to Caldwell for the boy Frederick, was dated May 6th, 1841, recited a consideration of twenty-two hundred dollars, and warranted the slave sound and healthy.

Joseph Harris, for plaintiff, testified that Susan C. Tanner was his daughter ; knew the negro, Frederick ; had owned him in Alabama in 1838 or 1839 ; was the separate property of Susan C. Tanner ; that witness gave the same negro to said Susan in August, 1842 ; she and her husband, Joseph R. Tanner were then residents of Texas ; loaned the negro to them in Alabama in 1838 or 1839, for the purpose of learning a trade ; soon after loaning the negro, Joseph R. Tanner brought the negro to Texas without the knowledge or consent of witness. In 1842 Susan C. Tanner wrote to witness, asking him for the boy, which he gave her, and told her to sell him, and get a piece of land for a home ; when Susan wrote for the boy, witness was on the eve of starting to Texas for him.

It was admitted that the execution under which the defendants claimed the land, was on a judgment rendered on a note, which was given in part consideration for the land. It was admitted that defendants purchased as alleged in the pleadings.

The Judge instructed the jury, without request, as follows :

In order to enable you to ascertain the rights of the parties to this tract of land, it will be necessary for you to determine from the evidence the character of the property in the land, as between Joseph R. Tanner, and his wife Susan. The deed

executed by Haynie to Mrs. Tanner, during coverture, would vest the title to the land in her and her husband jointly as community property, either having an equal interest therein, unless it is made to appear that the consideration for the purchase of the land, was the separate property of the wife. The separate property of the wife is all the property she has at the time of marriage, or may acquire subsequent to marriage, by gift, devise or descent. Property acquired during coverture, by either the husband or wife, in any other manner than by gift, devise or descent, is presumed to be community property belonging in equal interest to the husband and wife, and is subject to forced sale under execution, etc., in payment of community debts. To rebut this presumption of the character of the property, acquired by deed of conveyance to one of the parties, as in this case, during coverture, the party claiming the property thus acquired, must show by clear and satisfactory testimory, that the money or effects that went for the purchase of such property, was the separate property of the one setting up the claim ; when, the property thus acquired would be the separate property of the one to whom the money or effects belonged.

A married woman, residing in Texas, at any time acquiring property by gift, held it as her separate property.

In this case, if you find the land was purchased with the separate means or property of the wife, the land was her property and not liable to sale in payment of community debts ; and, if part only of the purchase money was paid out of the separate means of the wife, she took a separate interest in the land in proportion to the amount of the purchase price paid for out of her separate property ; and the balance of the purchase, not paid for with separate means of the wife, would be community property, and liable to sale in payment of community debts, and such would be the debt for the amount of purchase money unpaid.

If you find then, that the land was purchased with the sepa-

rate property of the wife, you will return your verdict for the plaintiffs.

If you find that part only of the purchase money for the land was paid for with the separate means of the wife, find a verdict for the plaintiffs for a proportionate interest in the land, and the remainder for the defendants. And if you find that the purchase was made with the community property means, or part in community means, and the balance on time, you will find for the defendants.

If you think proper you may return a special verdict, finding when the land was purchased, what was paid for it, whose property or means, and how much of each was paid ; what amount remained unpaid, &c.

The following instructions were asked by the defendants, and refused :

1. That, if the jury believe from the evidence that the land in controversy wrs purchased by Tanner, and the deed taken in the name of his wife, then the legal presumption is that it was community property, belonging jointly to the husband and wife, to be disposed of by the husband alone during the marriage, notwithstanding the deed was in the name of the wife. And to repel this legal presumption, and to constitute the property separate property of the wife, the legal presumption which is very cogent, must be repelled by clear and conclusive proof.

2d. That, if the jury believe from the evidence that Tanner and wife brought the negro boy, Frederick, from the State of Alabama to Texas in 1838 or '39, and he was kept in their possession until May, 1841, and then they sold and conveyed the negro to Caldwell for the land in controversy, proof that the wife, in 1842, wrote to her father, requesting him to give her the negro, which he did, will not constitute the land separate property.

3rd. That, if the jury believe from the evidence, that Tanner and wife had possession of the negro, claiming him as their

property, and sold him to Caldwell, and that the possession of Tanner and Caldwell was for more than two years prior to August, 1842, then any gift at that time from Harris to Mrs. Tanner can convey no separate property to her ; but the lapse of time had already divested Harris of the title to the negro, if he ever had any. (Winburn v. Cochran, 9 Tex. R. 125.)

4th. That, if the jury believe from the evidence that the land in controversy was community property, then it was subject to the debts contracted during the marriage and especially for the purchase money of said land.

5th. That, unless the jury are satisfied from the evidence, that Mrs. Tanner was dead at the time of the Sheriff's sale, then, if they believe the land was community property, they will find for the defendants, and that it must be proved by the plaintiff she was dead ; they cannot presume that she was dead.

6th. That, if the jury believe from the evidence that Tanner and wife brought the negro to Texas without the consent of Harris, the owner, and kept him from 1838 or '9, to May, 1841, and then sold him to Caldwell, who kept possession until August, 1842, then no acknowledgment of Tanner or his wife to Harris, in 1842, could revise Harris' title to the negro against Caldwell, and a gift then made to his daughter would not give her title to the negro so as to make him separate property.

7th. That, if the jury believe from the evidence that letters were written between Harris and Mrs. Tanner in relation to the negro, then the failure on the part of the plaintiffs to produce said letters as evidence upon the trial, without good excuse, in law raises a presumption against the oral testimony introduced to prove the contents of the letters ; and that the jury are authorized, from such circumstances, to regard such oral testimony with suspicion.

The jury returned the following verdict :

We find the land purchased by Mrs. Tanner on the 6th day of May, A. D., 1841.

That the sum of twenty-two hundred dollars was paid for the land.

That the negro boy, Fred.. and a yoke of oxen were paid in discharge of the aforesaid sum of twenty two hundred dollars.

That the aforesaid negro boy, Fred., was the separate property of Mrs. Susan C. Tanner, and the yoke of oxen was community property.

We find the sum of five hundred and twenty dollars was due upon the land purchased, the evidence of such indebtedness being found in the note given by Joseph R. Tanner to Wm. Wallace.

Upon this verdict the Court rendered a decree adjusting the interests of the parties upon the following data :

That the price of the land was $2720 ; that the boy Fred. paid $2053 33⅓ ; that the yoke of oxen paid $146 66⅔ ; that Joseph R. Tanner gave his note for $525, on which was judgment, April 6th, 1843, for $610 13⅛, revived April 11, 1849, for $951 25, under which the land was sold for 900 ; to the plaintiffs therefore were assigned 526 1-6 acres, subject to payment by them into Court in ninety days, of one-half of the full amount of principal, interest and costs in said execution ; to the defendants were assigned 73 5-6 acres ; commissioners appointed to divide the land. There was an alternative clause, that if the defendants would file a release of all interest within ninety days, the defendants should pay the full amount of the judgment on which the land was sold, or in default after ninety days, execution should issue therefor.

Motion for new trial overruled, &c.

*Oldham & Terrell*, for plaintiffs in error. The fifth paragraph of the charge of the Court cannot be correct. The purchase was an entirety, and the entire land was bound for the payment of the entire purchase money ; and the entire

tract would be liable to be sold under execution for the payment of the debt.

The third error is that the Court erred in refusing to charge the jury as asked by defendants.

The first instruction is in the language of this Court in ——

The second, third, sixth, were asked upon the authority of Winburn v. Cochran, 9 Tex. Rep., p. 125 ; and are in strict accordance with the principles determined in that case. Time, as proven by the testimony of Harris, the witness of plaintiffs, had vested the title to the negro in Tanner, and then in Caldwell. The pretended gift from Harris to Mrs. Tanner was eighteen months after the negro had been sold to Caldwell.

The fourth instruction asked has been ruled over and over again by this Court.

The seventh instruction is an elementary principle, recognized in every work upon evidence, strictly applicable to the facts of the case, and should have been given by the Court to the jury to enable them properly to weigh the evidence.

That the verdict was contrary to the evidence is clear.

The decree rendered in the cause is not warranted by the pleadings, evidence nor verdict.

*I. A. & G. W. Paschal*, for defendants in error.


WHEELER, J. It is not perceived that there is any error in the charge of the Court ; or in the refusing of instructions asked by the defendants.

The first and fourth instructions asked were embraced substantially in the charge of the Court. The second, third and sixth, assume that the facts of the case preclude the right of separate property in the plaintiffs' ancestor, Mrs. Tanner. We think otherwise ; and are of opinion, therefore, that the instructions were rightly refused. The removal of Tanner and wife, with the negro, to this State, was not necessarily an act of adverse holding on the part of the husband in his own

right. The negro was in the joint possession of Tanner and wife, in Alabama. If their subsequent acts amounted to a holding adversely to the owner, so as to cause the running of the Statute of Limitations, it would operate in favor of the party in whose right the negro was so held : and this, it seems, was the wife. The husband appears to have treated the negro as his wife's property. The negro had been loaned them by her father ; she joined her husband in the sale of him ; and the title to the land, into which he was converted, was taken in her name. These, though slight circumstances, may be looked to, in the absence of other evidence, to show in whose right the adverse holding was, and to whose benefit it would consequently inure. But there was not an adverse holding a sufficient length of time before the gift by the father to the wife, to vest title in either, or in their vendee, by operation of the Statute. Two years from the adoption of the Act of Limitations (5th February, 1841) had not elapsed ; so that no title had vested, nor was the title of the owner divested by reason of the adverse holding. The gift having been made to take effect in this State, operated, in accordance with the laws of this State, to vest the separate and exclusive property in the wife. It enured to the benefit of her vendee, making good his title ; and, by consequence, it operated to make good and indefeasible her title to the land purchased with the price of the negro, to the extent of her interest thereby acquired.

The refusal of the fifth instruction is not made the ground of complaint, specially, by the assignment of errors, nor in argument, and does not require especial notice.

The seventh instruction was rightly refused. The letters referred to were not essential as instruments, or evidence of title ; and no presumption ought to be indulged against the plaintiffs, for their failure to produce them, after the death of their ancestor, and so great a lapse of time, when they had not been notified to produce them ; and when, moreover, they were not sueing for the negro, which had been sold, and passed into

other hands. It was not to be expected that these evidences of title would have been preserved, or be accessible to the plaintiffs, under the circumstances.

We see nothing in the rulings of the Court upon the instructions to warrant a reversal of the judgment. And we think the verdict of the jury warranted by the evidence. But it is assigned as error and objected in argument, that the verdict did not warrant the judgment rendered thereon. The verdict finds that twenty-two hundred dollars of the purchase money, or price of the land, were discharged by the delivery of the negro and a yoke of oxen ; and that the negro was the separate property of the wife, and the oxen were community property. But it does not find at what price either was delivered, or the value of either, or afford any *data*, by which, that which the jury failed to ascertain by their verdict, may be ascertained and rendered certain. It is impossible to determine from the verdict, how much of the purchase money the negro discharged; or what was the amount of the wife's separate interest in the land. Consequently, it was impossible to render a judgment upon the verdict, which should ascertain and apportion that interest.

There can be no clearer principle, than that, where a jury has intervened and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. The Court can not look to the evidence on which the verdict was found, in order to determine what judgment to render ; but must look alone to the verdict. For it is upon that which the jury have found—not what they might, or ought to have found—that the Court proceeds to render judgment. The judgment is the conclusion of law upon the facts of the case, as found by the verdict of the jury. If the Court might look to the evidence, outside of the finding of the jury, for the facts on which to give judgment, the verdict might be wholly disregarded, and the right of trial by jury defeated. Upon this ground, it is clear, the present judgment must be reversed.

Claiborne v. Tanner.

There are matters of fact essential to support the judgment, and which go to constitute its basis, which are not admitted by the pleadings, nor embraced by the verdict. The judgment, in fine, is based upon the finding of the issues of fact by the Court, not found by the jury. Nor is the finding of the jury sufficient to enable this Court to proceed to render judgment. The case must therefore be remanded for a new trial, in order that the facts necessary to determine the rights of the parties may be ascertained by the verdict of a jury ; unless they shall see proper to waive the right of trial by the jury.

In respect to the final disposition of the case on the merits, it will suffice to say that the entire community interest in the land, being bound for the payment of the debt, which the defendants, upon their purchase, have paid and satisfied, and being liable to be sold in satisfaction of the debt, the sale was effectual to pass the community interest ; and to entitle the plaintiffs to recover any part of that interest they must refund the purchase money which the defendants have paid in satisfaction of the community debt ; and, they must moreover make out a case, which will entitle them, upon equitable grounds, to have the sale set aside, and annulled. (Jones v. Jones, 15 Tex. R. 143 ; Berry v. Young, Id. 369.)

We are of opinion that the judgment be reversed and the cause remanded.

Reversed and remanded.