ROLATER v. ROLATER. (No. 7799.)

(Court of Civil Appeals of Texas. Dallas. Oct. 27, 1917. Rehearing Denied Nov. 24, 1917.)

1. DIVORCE ☞253—DIVISION OF PROPERTY—EVIDENCE—PRESUMPTIONS.

Suits for divorce and an accounting with respect to community property are not unlike all other judicial proceedings, and proof must be adduced in support of every material issue asserted, and when such issue fails of proof, it cannot be established by presumption.

2. HUSBAND AND WIFE ☞262(1)—COMMUNITY PROPERTY — PRESUMPTIONS AS TO CHARACTER.

In an action for divorce and a partition of community property, where the evidence did not show that certain payments on an indebtedness on the husband's property during the existence of the marriage relation were made from community funds, there was no presumption to that effect, especially where the jury found that only a certain amount was so paid, thus excluding the payments in question.

3. HUSBAND AND WIFE ☞257—COMMUNITY PROPERTY—INSURANCE ON SEPARATE PROPERTY.

Where a wife insured the family residence, constituting the husband's separate property, and her own household furniture therein, in the husband's name, paying the premium from her separate funds, and, a fire having occurred, a portion of the proceeds was used in rebuilding the home, this did not convert the property into community property, since, when a house is destroyed by fire, the proceeds of insurance thereon stands in place and instead of the house and is the same character of property.

4. INSURANCE ☞115(1)—"INSURABLE INTEREST"—WHAT CONSTITUTES.

Any one has an "insurable interest" in property who derives a benefit from its existence or would suffer loss from its destruction, and a mere equitable title or other qualified property in the thing insured, though not in fee, may be protected by insurance if insured would suffer loss by the destruction of the subject-matter of the insurance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insurable Interest.]

5. DIVORCE ☞286—DIVISION OF PROPERTY—REVIEW.

In an action for divorce and a partition of community property, the court's action in charg-

ing the wife with one-half of an amount collected from a hotel owned by her, thereby finding that she received the benefit of the full sum, could not be disturbed where there was testimony tending to show that the husband never received the money and that it was not expended for community needs.

6. DIVORCE ☞252—DISPOSITION OF PROPERTY—INSURANCE.

In an action for divorce and a partition of community property, where it appeared that the wife from her separate property procured insurance on her household furniture and the family home, constituting the husband's separate property, and that a part of the proceeds was used in rebuilding after a fire, and a part paid to the wife as the value of her furniture, the jury was authorized to prorate the premium on the basis of the ratio that the house and the furniture each bore to the whole sum of insurance.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Josephine Rolater against Edward M. Rolater. From the decree, plaintiff appeals. Affirmed.

Claude M. McCallum, of Dallas, and L. J. Truett, of McKinney, for appellant. Newton P. Morrison, of Garland, and W. F. Bane and K. R. Craig, both of Dallas, for appellee.

RASBURY, J. Appellant sued appellee for divorce, partition of community property, and an accounting in that respect. Upon the verdict of the jury upon special issues of fact divorce was granted and certain sums of money allowed her and made an equitable charge against the separate real estate of appellee. Neither party complains of the divorce decree, but appellant has brought the case to this court complaining on several grounds of the accounting ordered by the judgment on the findings of the jury. These matters are so presented as to render a statement of the pleading and all the facts found by the jury unnecessary. The facts necessary to be detailed will be fully enumerated in discussing the several assignments of error.

[1, 2] The first issue attacks the sufficiency of the evidence to sustain the finding of the jury that $810 of appellee's separate funds were used in paying an indebtedness against separate lands of appellee existing at the time of the marriage of the parties. The facts necessary to be related on the issue thus raised are these: Appellant and appellee were married in the year 1903, appellee owning at the time a 66-acre farm, against which there was a principal indebtedness of $1,200, which the evidence shows without dispute was paid during the years 1906, 1907, 1909, 1910, 1911, and while the marriage relation existed. The total amount of principal and interest paid on the note during marriage of the parties was $1,879. The jury found that the community funds contributed for that purpose $973, appellee's separate funds $810, and appellant's separate funds $96, and no complaint is made concern-

ing the sufficiency of the evidence to support the finding that $973 of community funds and $96 of appellant's separate funds were applied for the purpose stated. The only proof which sustains the finding of the jury that $810 was paid out of appellee's separate funds is his statement that he sold two mules and two cows, his separate property, from which he realized $265, which amount he says at one point he applied on his note, and at another he used in payment of household expenses. Such sum falls $545 short of the amount found by the jury to have been paid out of appellee's separate estate. Likewise there is in the record no proof that said sum was paid from the community funds. Such being the facts disclosed by the record, counsel for appellant contends, in effect, that the presumption arises as matter of law that the sum not accounted for was paid from the community funds. No such presumption, we believe, may be indulged under the authorities. Suits for divorce and an accounting are not unlike all other judicial proceedings, in that proof must be adduced in support of every material issue asserted, and when such issue fails of any proof at all it cannot be established by presumption. The finding of the jury that the $810 was paid out of the separate funds of the appellee, we agree as stated, is not supported in full by the evidence. At the same time there is nothing whatever in the record that will support a finding of fact that it was paid out of the community funds. The finding of the jury that only $973 was so paid tends to deny the presumption that the $810 was paid from the community funds. It is true that the entire indebtedness was paid by appellee during the years 1906 to 1911, both inclusive, and while the marital relation existed, but the jury found, with all the facts before them, that only $973 was contributed by the community. We have found no case exactly in point as to the facts, but it has been held that payments made shortly after marriage by one of the spouses upon separate indebtedness will not be presumed to have been made out of community funds in the absence of proof in that respect. Medlenka v. Downing, 59 Tex. 32; McDougal v. Bradford, 80 Tex. 558, 16 S. W. 619; Richmond v. Sims, 144 S. W. 1142. It is, we believe, correct to say that, in the absence of all proof on such issue, the presumption does not arise that the money so paid was not contributed by the separate estate of the spouse bound to pay. As much is said in the Medlenka Case. Hence the proof being as we have stated, and no presumption arising in support of appellant's contention, it follows that no reversible error is shown.

[3] The next contention is the claim of appellant that she was entitled to have established against the separate estate of appellee as an equitable charge the sum of $575, which the court refused to do. The claim is based on these facts: Upon appellee's farm, which we have shown was his separate property, was his residence. In the year 1915 appellant caused the residence and contents, consisting largely of appellant's household furniture, to be insured in the name of appellee against loss by fire in the sum of $2,000, paying the premium of $81 out of her separate funds. The house and furniture were destroyed by fire, the insurance collected, out of which appellant was paid $700, the value of her household furniture, etc., $1,150 used in rebuilding appellee's home, and the remainder used for current expenses. In the accounting appellant was allowed the amount of the premium as a charge against appellee. Appellant contends that, in view of the payment of the premium from her separate funds, and in the absence of anything in the contract of insurance limiting appellant's probable interest in the insurance money in case of fire, and in view of her insurable interest therein as the consequence of her homestead rights, the proceeds of the policy became community funds, to one-half of which she was entitled. In support of her contention appellant cites the case of Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585. The substance of the holding in that case is that the proceeds of an insurance policy on the life of Martin's wife payable to the former became at the death of the latter separate funds of the former, because acquired after dissolution of the marriage relation, and was not converted into community funds by the fact that the policy premiums were paid by the husband from the community, unless done in fraud of the wife's rights. The rule so announced is, we believe, without application to the facts of the instant case. The insurance was payable to Martin, and could only accrue after his wife's death, and, as a consequence, after dissolution of the connubial partnership, and hence was not controlled by the statutes relating to acquisitions during that period. It is true that the premiums on the policy were paid from the community funds, but the court did not rule that community funds by such act could be converted into separate funds, as appellant, in effect, argues in order to support her theory that she could by such process convert her husband's separate lands into community holdings, but sustained the act of Martin on the ground that by law he had the sole control of the community affairs, and that his judgment in respect to what was best would not be interfered with, even when community funds were appropriated for such purpose, in the absence of a showing that such act was in fraud of the rights of the wife.

Appellant also relies upon Continental Fire Association v. Wingfield, 32 Tex. Civ. App. 194, 73 S. W. 847, and Grant v. Buchanan, 36 Tex. Civ. App. 334, 81 S. W. 820. Briefly stated, it was ruled in the case first cited,

which was a contest between the insurance company and Wingfield, that the husband has an insurable interest in property owned by his wife and her minor children by a former husband and occupied at the time as the homestead of the husband and wife. This holding was in response to the defense of the company that Wingfield was not the unconditional owner of the insured property, as provided by the policy, and hence had no insurable interest therein. The conclusion of the court was that, while the property was that of his wife and her children by a former husband, it was nevertheless the homestead of Wingfield and wife in actual use and occupation as such, and the right, being a valuable one, attaching to the house and improvements as well as the land, could be protected against loss from fire by the husband.

In the case last cited Mrs. Buchanan owned a life estate in certain lands, with knowledge of which the insurance company for her sole benefit and in her name insured the improvements thereon against loss by fire. There was a loss. The remaindermen intervened, claiming the fund on the ground that they were the owners of the land. Verdict was directed for Mrs. Buchanan, and on appeal it was ruled that, the policy being payable to Mrs. Buchanan, the remaindermen were only entitled to recover the excess over the value of her life estate, and, having failed to submit any testimony on that issue, the judgment was affirmed. The distinguished justice writing the opinion gave it as his personal view, the contract having been made for the sole benefit of Mrs. Buchanan, that she was entitled in any event to recover the full amount of the money.

[4] The general rule announced in both cases concerning the insurable interest of the parties is sound in principle and reason and supported by authority. Adopting in substance the language of another, any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, and the mere equitable title or other qualified property in the thing insured, though not the fee, may be protected by insurance in case the insured might suffer loss by the destruction of the subject-matter of the insurance. 14 R. C. L. 910; 19 Cyc. 583; Kludt v. German Fire Ins. Co., 152 Wis. 637, 140 N. W. 321, 45 L. R. A. (N. S.) 1131, Ann. Cas. 1914C, 609. Aside from the cases from our own courts cited above on the question of insurable interest we have found the same principle sustained in East Texas Fire Ins. Co. v. Crawford (Sup.) 16 S. W. 1068; Warren v. Springfield F. & M. Ins. Co., 13 Tex. Civ. App. 466, 35 S. W. 810; Georgia Home Ins. Co. v. Brady, 41 S. W. 513.

A careful consideration of the texts and decisions cited by us will disclose that the contention of appellant is sustained by none of them, unless it be the Buchanan Case. That case is distinguishable in its facts from the instant case in the respect that the policy was issued to Mrs. Buchanan and intended for her sole use and benefit, while in the instant case the policy was issued to appellee, but covered partly his separate property and partly the separate property of appellant. We conclude, whatever may be the analogies to be drawn from the Buchanan Case, it never was intended thereby to hold that, because the premium upon a policy insuring the home situated on the husband's separate property was paid by the wife from her separate funds, this would, in case of loss, convert the proceeds of the policy into community funds. We base such conclusion upon our conviction that when the house upon the land is destroyed by fire and there exists thereon a policy of insurance the money arising therefrom stands in the place and stead of such home. That it does as between the owner and creditors has been settled. Chase v. Swayne, 88 Tex. 218, 30 S. W. 1049, 53 Am. St. Rep. 742. In that case, which was one to subject the proceeds from insurance on the home to garnishment by creditors, it was said in substance that in such cases insurance policies are not considered strictly personal contracts, separate from the realty, but should be regarded as contracts, which pass with the land to whomsoever the title passes, and that a destruction of the property by fire is an involuntary conversion of the house into money, which represents to the owner of the land the house lost, and in that particular case exempt from garnishment at the suit of creditors, because the realty upon which it was located was exempt. The application of the rule to this case is that the policy on appellee's home attached to and formed a part of the realty, and when the house was destroyed by fire the fund arising from the policy occupied the same status which the house did, that is, the separate estate of appellee. To hold otherwise would present the startling situation of conferring upon one of the spouses the authority of converting the separate estate of the other into the joint property of both for a wholly inadequate consideration and without that other's consent, since it would seem that either spouse, having, as they do, an insurable interest in such property, could upon their own initiative procure insurance in their own name. We do not, of course, intend in any respect to challenge the claim that appellant had an insurable interest in appellee's home, but only to say that such insurable interest is in such subjection to his superior and controlling interest as to prevent an actual conversion or transfer of his interest to her.

We also conclude, all other issues aside, that when appellee used the insurance money to rebuild the home, as he did, and the parties resumed its occupancy as a home, appellant's interest and right in the fund was restored in contemplation of the rule holding she had an insurable interest in the same.

[5] Appellant complains of the action of the

trial court in charging her with an item of $120. The court's action arises upon these facts: At the time the parties were married appellant owned a hotel in Melissa. The jury found in response to appropriate questions that appellant collected $240 from such source. According to her testimony, she spent such sum in current family expenses. Appellee, while not so positive in his statements, in effect denies he ever received it, or that it was expended for the community needs. How the money was used was not submitted to the jury. The court, the record being as stated, charged appellant with one-half the sum, which is but a finding that appellant received the benefit of the full sum, and there being, as we have shown, testimony which will support the finding, we are without authority to disturb it, whatever our personal deductions from the testimony might be.

[6] In view of the conclusion we have reached on the sixth assignment of error, it will be unnecessary to discuss the third and fourth assignments, save to say that we think the jury was authorized to prorate the premium cost on the house and furniture on the basis of the ratio each bore to the whole sum of insurance which they appear to have done in their finding.

We have carefully read the testimony adduced and the authorities cited, and as carefully considered the propositions advanced, and feel on the whole that the record fails to disclose reversible error, and for which reason the judgment is affirmed.