## GILLESPIE v. GILLESPIE.

### No. 1696.

Court of Civil Appeals of Texas.
Eastland.

Oct. 8, 1937.

Rehearing Denied Nov. 5, 1937.

L. M. Williams and Jas. A. Stephens, both of Benjamin, and Chas. E. Coombes, of Stamford, for appellant.

D. J. Brookreson, of Benjamin, and E. O. Northcutt, of Amarillo, for appellee.

GRISSOM, Justice.

Boyd Gillespie sued his wife, Anna Gillespie, for divorce. She answered and filed a cross-action for divorce, for a judgment establishing her interest (alleged to be one half, because community) in 200 acres of land and in certain personal property, and as to the personal property a judgment for one-half the value of personal property sold by her husband, for partition, and for attorneys' fees.

The parties will be referred to as in the trial court.

The verdict and judgment was for the plaintiff on the question of the divorce. Since the judgment in this respect is not complained of, it will not be further considered.

In addition to the divorce issue, the court submitted the following issues, which the jury answered as shown:

"Special issue No. 2. Do you find from a preponderance of the evidence that at the time that the 200 acres of land was reconveyed to plaintiff Boyd Gillespie, by deed dated August 16, 1932, it was the intention of the plaintiff, Boyd Gillespie, and defendant, Anna Gillespie, that said 200 acres of land would be their community property; answer yes or no. Answer: Yes.

"Issue No. 3. Do you find from a preponderance of the evidence that on August 16, 1932, the date of the reconveyance by deed of the 200 acres to plaintiff, that such property was purchased, in whole or in part, with the separate funds of the plaintiff, answer in whole or in part. Answer: In part.

"Issue No. 4. From a preponderance of the evidence, what amount of the purchase money was plaintiff's separate funds, answer as you find the facts to be. Answer: $2250.

"Issue No. 5. Do you find from a preponderance of the evidence that there is now on hand any personal property belonging to the plaintiff, Boyd Gillespie, and defendant Anna Gillespie, answer yes or no. Answer: Yes.

"Issue No. 6. From a preponderance of the evidence, what do you find to be the reasonable market value, if any, of such community personal property, answer in dollars and cents. Answer: $2000.

"Issue No. 7. Do you find from a preponderance of the evidence that there is now any community debts or obligations owing by the said Boyd Gillespie and Anna Gillespie, answer yes or no. Answer: Yes.

"Issue No. 8. What do you find from a preponderance of the evidence is the amount of such community debts or obligations, if any, so owing by the said Boyd Gillespie and Anna Gillespie, answer in dollars and cents. Answer: $900.

"Issue No. 9. What do you find from a preponderance of the evidence would be a reasonable attorney's fee, if any, for the defense of this suit on behalf of the defendant, Anna Gillespie? Answer as you find the facts to be. Answer: $250."

The court entered judgment that the community personal property consisted of certain property therein mentioned; that it was of the value of $2,000; that the community debts with which it was charged amounted to $900; that the 200 acres of land was community property; that the plaintiff and defendant each owned an undivided one-half interest therein; that the defendant was entitled to $250 attorneys' fees.

It was ordered that execution issue to the sheriff ordering him to seize and sell said personal property, and that the $900 in community debts owing by the community be paid out of the proceeds of sale and the remainder divided equally between plaintiff and defendant.

From said judgment the plaintiff has appealed to this court.

The parties were married in 1926 and separated in March, 1935. At the time of the marriage plaintiff owned, among other things, 320 acres of land on which he lived; when the parties married they moved on this farm and continued to reside thereon until the defendant left in 1935. In October, 1931, the 320-acre tract was conveyed to Eck Gillespie, and in August, 1932, Eck reconveyed to Boyd Gillespie

200 acres thereof. In the deed from Eck to Boyd Gillespie to the 200 acres, the consideration was recited to be $500 cash paid by Boyd Gillespie and the "cancellation of the balance due on Note No. Two and Note No. Three, dated November 21, 1931, and due respectively June 1, 1933 and December 1, 1933, executed by the Grantor herein to Boyd Gillespie, and being vendor's lien notes as part of the purchase money of the South, one half (S½) of Section 79, Block B, H. & T. C. Ry. Co. Lands situated in Knox County, Texas, the surrender and receipt of said two vendor's lien notes, above described, is hereby acknowledged; the further consideration that the Grantee herein, Boyd Gillespie, assumes and promises to pay all taxes that are delinquent, as well as the taxes for the current year 1932; and the further consideration that the Grantee herein shall assume and pay the unpaid balance due the Federal Farm Loan Bank of Houston, Texas, on the hereinafter described property."

The vendor's lien notes so canceled were the separate property of plaintiff; the taxes and debts assumed were those that he already owed prior to the conveyance to Eck, except perhaps taxes for the period during which Eck Gillespie held the equitable title to the 200 acres. The debt owing the Federal Land Bank was the same debt secured by a lien on said land that existed prior to plaintiff's marriage. So, with possible minor exceptions as to said debts and taxes, plaintiff was in the same position as before the conveyance to Eck. What Eck paid, if anything, on debts and taxes mentioned is not shown. Plaintiff testified that at the date of the reconveyance of the 200 acres there were "about the same" amount of taxes owing on the 200 acres as at the time it was conveyed to Eck. Plaintiff testified, in effect, that in taking the 200 acres back he assumed practically the same position relative to debts, taxes, etc., thereon as existed when he conveyed to Eck Gillespie.

 The 320 acres of land were unquestionably the separate property of plaintiff, having been acquired by him prior to marriage. It is true that some payments on the debt secured thereby had been made out of community funds prior to the conveyance to Eck; these aggregated $334.40; they were an equitable charge thereon in favor of the community estate. The 320 acres were sold to Eck, at least partly, on credit; plaintiff retaining a vendor's lien, the effect of which was that plaintiff retained the superior legal title to the land. Had there been a complete rescission of this contract, we do not think it would be contended that the property did not belong to plaintiff's separate estate. The details of the sale and repurchase of a part of the land, or conveyance and reconveyance, are not shown. The evidence is meager in some important respects. But it is undisputed that in less than a year after the conveyance to him, Eck Gillespie reconveyed or sold 200 acres of the 320-acre tract to Boyd Gillespie. In so far as the consideration for this conveyance is concerned, that evidenced by the cancellation of the balance owing on certain vendor's lien notes constituted payment out of plaintiff's separate estate. This amount is not definitely shown, but is sometimes treated as $2,000 and at other times, apparently, as $2,250. Regardless of prior ownership as his separate property, if the cancellation of said vendor's lien notes constituted the sole consideration, the 200 acres would unquestionably become the plaintiff's separate property. With reference to debts and taxes assumed, if plaintiff were placed in the same position relative thereto as prior to the conveyance to his brother Eck, this should not necessarily affect his separate ownership. The substance of plaintiff's testimony is that the $500 cash recited in the deed to have been paid was not paid nor supposed to be paid. If it was paid, there is no evidence of the source from which it was paid. As we understand appellee's contention, it is that the recital in the deed constitutes some evidence that the $500 was paid and that it was paid from community property; the recital is some evidence that the $500 was paid, it does not constitute evidence of the source from which it was paid. Certainly plaintiff's evidence made it a question of fact as to whether or not the $500 was paid. Rolater v. Rolater (Tex.Civ.App.) 198 S.W. 391, 392; Gameson v. Gameson (Tex.Civ.App.) 162 S.W. 1169, 1171, par. 8; Wideman v. Coleman (Tex.Com.App.) 17 S.W.(2d) 786.

 We hold that the evidence was insufficient to support the answer to special issue No. 2 that plaintiff and defendant intended the 200 acres to be their community property. Defendant testified that they agreed to buy the 200 acres for their home or homestead. Plaintiff had his home thereon prior to his marriage; plaintiff and defendant had their home

there from the time of marriage until she left him, and plaintiff continued to reside thereon thereafter. It was his and their home when it was his separate property. It continued to be occupied by them after the conveyance to Eck Gillespie. There is no inconsistency in her testimony with reference to making their home thereon and an intention that it was to remain or again be the plaintiff's separate property. It is certainly an established principle of law that the homestead may be upon the separate property of either spouse as well as on community property. There was no finding that the $500 was paid; that, if paid, it was paid out of community funds; nor that it was intended that the debts secured by the farm were intended to be paid out of the community funds, if that be material. Neither is there pleading nor evidence that a gift was intended. See Gleich v. Bongio (Tex.Com.App.) 99 S.W. (2d) 881, 884. Plaintiff's prior relationship to the property and the attempt to resume it indicated a contrary intention. The plaintiff was the grantee in the deed from Eck Gillespie. The evidence to the effect that as to the debts thereon plaintiff was in practically the same position as when he owned and held it as his separate property, and that the $500 was not paid nor supposed to be paid, and that the real consideration was about $2,000 paid for by property belonging to plaintiff's separate estate for Eck Gillespie's equitable title, plaintiff then holding the superior legal title to the land by virtue of his vendor's lien, certainly strongly tended to show that it was plaintiff's separate property, charged with debts thereon paid out of the community and that it was so intended.

■ The burden was upon the defendant to prove her allegation that the property was community. The presumption that property belongs to the community estate, arising from the conveyance to plaintiff during the marriage relation, and the possession of the land at the time after the dissolution of the marriage, arising by virtue of article 4619 (as amended by Acts 1927, c. 148 [Vernon's Ann.Civ.St. art. 4619]), was certainly sufficiently rebutted by the evidence referred to to make an issue of fact. Defendant alleged the property was community; the burden was on her to prove it. Under the statute the fact that the land was conveyed to plaintiff while married is prima facie proof of defendant's contention that it is community property, but is rebuttable.

The statutory presumption may cause a shift in the burden of proceeding, but not the burden of proof. 17 Tex.Jur. §§ 94, 95, 96, 98, 99, and, on effect of presumption on burden of proof, section 100, p. 327; Boswell v. Pannell, 107 Tex. 433, 180 S.W. 593; Mexican Cent. R. Co. v. Lauricella, 87 Tex. 277, 28 S.W. 277, 47 Am.St. Rep. 103; Clark v. Hills, 67 Tex. 141, 2 S.W. 356; 23 Tex.Jur. 355 et seq.; Rolater v. Rolater, supra; Janes v. Gulf Prod. Co. (Tex.Civ.App.) 15 S.W.(2d) 1102, 1107 (writ ref.); McCutchen v. Purinton, 84 Tex. 603, 19 S.W. 710; Strickland v. Pilgrim (Tex.Civ.App.) 300 S.W. 215, 217.

■ If the separate property of one spouse is exchanged for other property during the existence of the marriage relation, the property so acquired being conveyed to the owner of the separate property so exchanged, ordinarily it becomes the separate property of the spouse to whom it was conveyed and not community property. 64 A.L.R. 247. "Where the separate property of one of the spouses furnishes only a part of the consideration for property acquired in an exchange in the name of such spouse, the property thus acquired belongs to the separate estate of that spouse in the proportion that his or her separate property entered into the consideration therefor." 64 A.L.R. 249; Claiborne v. Tanner's Heirs, 18 Tex. 68; Ochoa v. Edwards (Tex.Civ.App.) 189 S. W. 1022 (writ ref.). See Stephens v. Stephens (Tex.Civ.App.) 292 S.W. 290; Smith v. Strahan, 16 Tex. 314, 67 Am.Dec. 622; Price v. McAnelly (Tex.Civ.App.) 287 S.W. 77; 17 Tex.Jur. p. 314 et seq.

■ We sustain the appellant's fifteenth assignment of error and proposition thereunder. We are of the opinion that the answer of the jury to special issue No. 2, that the 200 acres was intended to be community property, and the answer to special issue No. 8, that the community debts and obligations amounted to $900, are in conflict. If the 200 acres belong to the community, then the debts and charges thereon are community debts, and such debts, taken together with others not in dispute, aggregate considerably more than $900.

■ We do not think the award of $250 as attorney's fees constituted an abuse of discretion. The judgment as to interest on said amount was in effect only a decree that the judgment should bear interest from its date at the legal rate. Fasken v.

·Fasken (Tex.Civ.App.) 260 S.W. 698; Becker v. Becker (Tex.Civ.App.) 299 S.W. 528; 15 Tex.Jur. § 154, p. 650 et seq.; Speer's Law of Marital Rights in Texas (3d Ed.) §§ 638, 196, and 181.

That part of the judgment of the district court granting plaintiff a divorce and awarding attorney's fees is undisturbed. In all other respects it is reversed and remanded.

Affirmed in part, and in part reversed and remanded.